REA BROS. SHEEP CO., RESPONDENT, *v.* RUDI ET AL., APPELLANTS.

(No. 3,158.)

(Submitted September 14, 1912. Decided October 3, 1912.)

[127 Pac. 85.]

*Interlocutory Injunction — Discretion—Evidence—Insufficiency —Livestock—Trespass—Grazing Lands.*

Interlocutory Injunction—Discretion—When Granting Improper.
    1. The granting or refusing of an interlocutory injunction is lodged in the discretion of the district court; such discretion must, however, be exercised according to correct principles of law and evidence in a case properly presented, and where the grounds upon which the application is based are not satisfactorily shown to exist, the court has no power to put the adverse party under restraint.

Same—Evidence.
    2. To entitle plaintiff to an injunction *pendente lite*, it is not necessary that a case be made which would entitle him to relief at all events on final hearing; if a *prima facie* case is made out, or if it is left doubtful whether or not plaintiff will suffer irreparable injury before his rights can be determined, the court ought to incline to issue the injunction and preserve the *status quo*.

Same—Evidence—Insufficiency.
    3. In an action for damages, plaintiff complained of repeated trespasses by defendant upon his grazing lands and that they had

(149)

threatened to continue them, with the result that pending the action he would be deprived of their use and that the injury thus suffered was incapable of adequate compensation in damages, and therefore asked for injunctive relief. Defendant's answer put in issue all the allegations of wrongdoing at any time in the past as well as any being done or threatened at the time the action was commenced. The court granted an injunction after a hearing. Exclusive of plaintiff's evidence of title, there was no evidence in support of his allegations before the court when it granted the restraining order. *Held*, error, there not being anything before it to put its discretionary power in motion.

Livestock—Trespass—Grazing Lands.
4.  One who knowingly and willfully drives his stock upon the lands of another, though uninclosed, is guilty of a trespass, and must respond in damages at the suit of the latter.

*Appeal from District Court, Rosebud County; Sydney Fox, Judge.*

ACTION by the Rea Bros. Sheep Company against Nils Rudi and another, partners as Rudi Bros. From an order granting a preliminary injunction, defendants appeal. Reversed and remanded.

*Messrs. Horkan & Beeman,* and *Mr. George W. Farr,* for Appellants, submitted a brief and one in reply to that of Respondent; *Mr. Geo. R. Horkan* argued the cause orally.

The contentions herein urged on behalf of appellants do not in any manner conflict with or intrude upon the rule announced in *Monroe* v. *Cannon,* 24 Mont. 316, 81 Am. St. Rep. 439, 61 Pac. 863, *Musselshell Cattle Co.* v. *Woolfolk,* 34 Mont. 126, 85 Pac. 875, "that one who knowingly and willfully drives his stock upon the land of another, though uninclosed, is guilty of trespassing, and must respond in damages at the suit of the latter." It is conceded that the above rule is the law of this state, and that when a person repeatedly violates it, a court of equity will grant a restraining order to prevent such repeated violation. But in order to invoke the aid of a court of conscience, the litigant seeking such aid must at least comply with the elementary rules of equity jurisprudence. Two of the most important of these rules are, "That he who seeks equity must do equity," and that "He who comes into equity must come

with clean hands," or as it is otherwise forcibly expressed, "He that hath committed inequity shall not have equity." These fundamental maxims pervade the entire body of the law. The record in this case plainly and forcibly discloses that the respondent corporation is not in court with clean hands, doing and seeking equity, but is in court for the purpose of having affirmed by this court an injunction order, the effect of which is to give, and does give, to it for the purpose of herding, running, ranging and grazing its sheep and other livestock, an absolute monopoly in and to a tract of country, consisting of about 600 square miles, or over 300,000 acres, of which land it claims title, either as lessee.or otherwise, to only about 160,000 acres; the remaining portion of said land being unclaimed and unappropriated United States government and school lands, thereby depriving these appellants, as well as numerous other stock owners of Rosebud county, of the recognized right which every citizen has to use the public domain for the purpose of herding, running and feeding his livestock thereon. There is no equity in the order of Judge Fox granting to the plaintiff and respondent corporation the injunction order herein appealed from. Neither has the plaintiff corporation any right to take away, destroy or limit the public right, privilege or license, which the government of the United States has granted to each citizen alike, to go upon and use the public domain. These questions have been decided by the highest judicial authority of this country. (*Buford* v. *Houtz,* 133 U. S. 320, 10 Sup. Ct. Rep. 305, 33 L. Ed. 618; *Richards* v. *Sanderson,* 39 Colo. 274, 121 Am. St. Rep. 167, 89 Pac. 769; *Taylor et al.* v. *Buford et al.,* 8 Utah, 116, 29 Pac. 881; *Mathews* v. *Great Northern Ry. Co.,* 7 N. D. 87, 72 N. W. 1087; *Martin* v. *Platte Valley Sheep Co.,* 12 Wyo. 432, 76 Pac. 571, 78 Pac. 1093; *Clemmons* v. *Gillette,* 33 Mont. 328, 83 Pac. 881; 32 Cyc. 796.)

The injunction order herein appealed from is of such a character that it is impossible for the defendants, or̃ the other defendants included in similar cases, this case being one of many wherein the respondent is plaintiff in the lower court, to go upon, across, feed or graze any portion or part of the vast tract

of unclaimed and unappropriated government land within the territory set out and contained in the record. If these appellants cross any portion of the vast tract of land leased by the respondent from the Northern Pacific Railway Company for the purpose of going on to and grazing upon the vast tract of unclaimed and unappropriated government land, then by the very terms of the injunction order they become liable to be cited into court and adjudged guilty of contempt. It deprives the appellants of that privilege which the government of the United States has given them, in common with other citizens of this state, to use the public domain for the purpose of pasturing thereon their flocks and herds. That a court of equity has no right to limit this privilege, either directly or indirectly, was definitely settled in the *Buford Case, supra.* (See, also, *Clemmons* v. *Gillette,* 33 Mont. 321, 83 Pac. 881; *Richards* v. *Sanderson,* 39 Colo. 274, 121 Am. St. Rep. 167, 89 Pac. 769; *Mathews* v. *Great Northern Ry. Co.,* 7 N. D. 87, 72 N. W. 1087; *Martin* v. *Platte Valley Sheep Co.,* 12 Wyo. 432, 76 Pac. 571, 78 Pac. 1093.)

The respondent corporation is not entitled to invoke the injunctive power of a court of equity because of the further fact that it comes into a court of equity as a violator of section 1 of the Act of February 25, 1885 (Chap. 149, 23 Stats. at Large, 321 [U. S. Comp. Stats. 1901, p. 1524]), which prohibits the assertion of a right to the exclusive use of any part of the public lands, "without claim, color of title," *etc.* The record shows that the respondent corporation caused to be plowed a furrow around the entire tract of land set forth in the appellants' answer, which included therein over 200,000 acres of unappropriated and unclaimed United States government land, and the said respondent corporation, through its officers and agents, repeatedly asserted and informed the defendants that it claimed "all of the lands within the plowed furrow, government lands as well as railroad lands."

It had no foundation for such a claim, and hence had no right to call upon a court of conscience to come to its relief. (*Clemmons* v. *Gillette, supra; Garst* v. *Love,* 6 Okl. 46, 55 Pac. 19.)

*Messrs. Gunn & Rasch, Messrs. Hathhorn & Brown, Messrs. F. V. H. Collins, B. T. Tull,* and *C. L. Crum,* for Respondent, submitted a brief; *Mr. M. S. Gunn* argued the cause orally.

The question presented by the appeal in this case has been twice decided by this court. In the case of *Monroe* v. *Cannon,* 24 Mont. 316, 81 Am. St. Rep. 439, 61 Pac. 863, and again in the case of the *Musselshell Cattle Co.* v. *Woolfolk,* 34 Mont. 126, 85 Pac. 874, it was decided that a trespass is committed where one drives or grazes his stock upon the uninclosed lands of another.

Counsel for appellant cite and rely upon the case of *Buford* v. *Houtz,* 133 U. S. 320, 33 L. Ed. 618, 10 Sup. Ct. Rep. 305, in support of their contention that the injunction should not have been granted. In the case of *Northern Pacific Ry. Co.* v. *Cunningham,* 89 Fed. 594, which was a suit to enjoin the defendant from pasturing sheep on the uninclosed lands of the complainant, Judge Hanford, in commenting upon the case of *Buford* v. *Houtz,* which was cited and relied upon by the defendants, said: "The case of *Buford* v. *Houtz,* 133 U. S. 320–332, 33 L. Ed. 618, 10 Sup. Ct. Rep. 307, upon which the defendant relies, would be conclusive in his favor upon this hearing, if the local law upon which that decision rests prevailed in this state. In the opinion by Mr. Justice Miller, the supreme court is careful to make it clear that in Utah, where the case arose, the rule of the common law, that the owner of domestic animals should be liable for their trespassing upon uninclosed land of his neighbor, does not prevail, but, on the contrary, his right to permit them, when not dangerous, to run at large, without responsibility for their getting upon such land of his neighbor, is a part of the statute law." In the case of *Lazarus* v. *Phelps,* 152 U. S. 81, 38 L. Ed. 363, 14 Sup. Ct. Rep. 477, it was explained that the case of *Buford* v. *Houtz* had reference only to accidental or unintentional trespasses.

The implied license to the public generally to use the public domain for grazing purposes is recognized by this court in the case of *Clemmons* v. *Gillette,* 33 Mont. 321, 83 Pac. 879. It fol-

lows that in this state, while a person has the license and privilege of using the public domain in common with others, he cannot, as an incident to this license and privilege, drive or pasture his livestock upon lands to which title has passed from the government, although such lands may be uninclosed and may be adjacent to public domain.

The plaintiff is entitled to an injunction by virtue of the decision of this court in the case of the *Musselshell Cattle Co.* v. *Woolfolk, supra;* see, also, *Dastervignes* v. *United States,* 122 Fed. 30, 58 C. C. A. 346; *Northern Pac. Ry. Co.* v. *Cunningham,* 89 Fed. 594; *Light* v. *United States,* 220 U. S. 523, 55 L. Ed. 570, 31 Sup. Ct. Rep. 485.

It was sought at the hearing to show that the plaintiff had denied the rights of the defendants to graze their sheep on the public domain adjacent to the lands of the plaintiff. If this is true, it could not defeat the right of the plaintiff to the injunctive relief sought, for the reason that the only lands it is seeking by this action to have protected against the trespasses of the defendants are the lands to which it is entitled to possession of either as owner or lessee. Although a person may make inequitable demands, or insist that he has rights which he does not have, he will not be denied relief by a court of equity because thereof, provided he does not assume an inequitable position before the court. The right of a person to equitable relief will be determined in view of the attitude he assumes before the court and not by what he may have claimed before he applied to the court for relief. (1 Pomeroy's Equity Jurisprudence, 3d ed., p. 656; *Kinner* v. *Railway Co.,* 69 Ohio, 339, 69 N. E. 614; *Rice* v. *Rockefeller,* 134 N. Y. 174, 30 Am. St. Rep. 658, 17 L. R. A. 237, 31 N. E. 907; *Chicago* v. *U. S. & T. Co.,* 164 Ill. 224, 35 L. R. A. 281, 45 N. E. 430.)

At the hearing the attorney representing the plaintiff, in moving for the injunction, conceded that the defendants are entitled to a right of way over the lands of the plaintiff where such lands completely surround lands constituting a part of the public domain. The question of a right of way of necessity, under the circumstances and conditions disclosed by the records

in this case, was considered by Judge Hanford in *Northern Pacific Ry. Co.* v. *Cunningham, supra,* where it was held that where the government conveys the odd-numbered sections, retaining title to the even-numbered sections, there is an implied reservation of a right of way of necessity over the odd-numbered sections for the purpose of reaching the even-numbered sections. This right of way, however, should be so located as to cause the least inconvenience and the least damage possible to the owner of the even-numbered sections. It is apparent that a right of way across the corners of the odd-numbered sections, taking from each odd-numbered section a triangular parcel of ground of the same dimensions, would cause the least inconvenience and damage to the owner and at the same time permit the exercise of the license or privilege of grazing sheep upon the even-numbered sections. A right of way 100 feet in width should be ample for such purpose. We therefore suggest and consent to a modification of the injunction granted in this case by making provision for such a right of way.

Wherever a right of way of necessity exists, the owner of the estate over which it is to pass has the right to locate it, but if he fails to do so within a reasonable time after request, the person entitled to it may select a suitable route therefor, having reasonable regard to the necessity and convenience of the owner of the estate. (*Brigham* v. *Smith,* 4 Gray (Mass.), 297, 64 Am. Dec. 76; *Wademan* v. *Albany etc. R. R. Co.,* 51 N. Y. 568.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought on October 13, 1911, to recover damages for a trespass by defendants upon lands belonging to plaintiff. Injunctive relief is also sought to restrain defendants from committing further trespasses in which it is alleged they were engaged at the time the action was commenced, and which, it is also alleged, they threatened to continue. The lands described in the complaint and alleged to belong to plaintiff consist principally of the alternate odd sections embraced within the limits of the grant made by Congress to the Northern Pacific Railroad

(now Railway) Company in Rosebud county, aggregating about 160,000 acres. The public surveys have been extended over the whole area wherein these lands lie, except an area of about 40,000 acres. The alternate even-numbered sections and the unsurveyed portion, except small areas occupied by defendants and others as homestead settlements, and the sections granted to the state of Montana for the support of schools, are open, unoccupied lands belonging to the United States. Whether the school sections are under lease or are unoccupied does not appear. The plaintiff is the owner, by purchase from the railway company, of a portion of the lands described, and holds the remainder under lease. It is engaged in breeding, raising, buying and selling sheep, and is the owner of about 75,000 head, which are divided into a number of small flocks under the charge of herders and camp-tenders. Only small areas of its lands are inclosed. Within these inclosures are kept the work horses and dairy cattle necessary for the use of those employed in caring for plaintiff's sheep. It is alleged in the complaint that plaintiff's lands are well stocked with native grasses and verdure, and are mainly valuable for grazing purposes; that there are upon them numerous watering-places, natural and artificial, which the plaintiff maintains in order to enable it to use the lands for pasturing its sheep and other stock; that the lands constitute its entire winter range and that it needs all the grasses, verdure and natural hay growing thereon, and all the water and watering-places in order properly to care for its stock during all seasons of the year; that the defendants are engaged in breeding, raising, buying and selling sheep; that they own a large number which they hold in smaller flocks in charge of numerous employees; that the defendants and their employees are well acquainted with the boundaries of plaintiff's lands, but, notwithstanding such knowledge, during the months of June, July, August, and September, 1911, the employees, under the direction of defendants, deliberately and intentionally drove upon them several large flocks of sheep and held and pastured them there, thus consuming and destroying the grasses and verdure growing thereon, as well as the water in the watering

places, to the great injury and damage of plaintiff; that, though the defendants and their said employees during the months mentioned were repeatedly requested to desist from their trespasses, they have continued them and have informed the plaintiff that they intend to so occupy and use its lands in the future; that the damage thus done and being done to the plaintiff is irreparable, in that it cannot be estimated in money, and that in any event the defendants are insolvent, and are therefore unable to respond in damages.

Upon presentation to him of the complaint at chambers the district judge made an order requiring the defendants to appear before the court at Forsyth on November 6, 1911, to show cause why they should not be enjoined pending the action from committing the acts complained of. The order put them under restraint until the hearing could be had. After some delay a hearing was had on November 25. The defendants appeared and filed their verified answer. In it they admit that they are engaged in breeding, raising, buying and selling sheep, and that they hold them in charge of their employees, pasturing them upon the unoccupied public lands adjoining those of plaintiff, but deny that they have been guilty of the trespasses alleged in the complaint, or that they have informed the plaintiff that they intend to continue them, or that they are insolvent. They allege affirmatively that the plaintiff, by purchasing and leasing the odd-numbered sections from the railway company, has sought to put itself in a position to control all the intervening sections of the public lands and to exclude all other persons from using them for grazing purposes, thus creating a monopoly in itself of lands to the use of which the defendants and all others are equally entitled, and that this action and other similar ones brought by plaintiff and now pending were instituted in order to effect this purpose. It was stipulated that orders to show cause in five other actions brought by plaintiff against other defendants, the purpose of which is the same as that sought herein, should be disposed of at the same hearing, each of the defendants therein being accorded the privilege of submitting such evidence as was specially applicable to his case.

The plaintiff did not introduce any evidence other than the documentary evidence of its title. Counsel offered three affidavits which tended to corroborate some of the allegations of the complaint, but upon objection by defendants these were excluded. The defendants, in addition to their verified answer, offered evidence to controvert the allegations of the complaint touching their knowledge of the boundaries of plaintiff's lands, and tending to show that there are no markings thereon other than the corner posts and similar designations put in place by the government surveyors. They offered to show, also, that they occupy a homestead claim in an even-numbered section within the limits of the railway grant, that they have been accustomed to pasture their sheep upon the government land adjoining, and that in September, 1911, they were informed by one of the officers of plaintiff that they had no rights there or upon any other lands within the general limits of plaintiff's holdings. Evidence was also offered to show that the plaintiff has caused a furrow to be plowed around the whole area within which its lands lie, and has heretofore denied the right of the defendants to pasture stock upon any of the lands within it, whether public lands or not. This evidence was all excluded as immaterial. Some of the defendants in the other cases were permitted to testify that, after they had ascertained that the plaintiff asserted the right to the exclusive use of all lands lying within the general boundaries including its lands, they moved their sheep, and had abstained from making use even of the government sections. All other evidence offered by the defendants in any of the actions was excluded. At the close of the hearing, there was no evidence before the court tending to show that the defendants in this case, or any of the associated cases, were pasturing sheep upon any portion of plaintiff's lands at the time these actions were commenced, or that they were threatening to do so. The court nevertheless made an order directing the injunction to issue. An appeal was thereupon taken by the defendants in this case; the others being left to abide the action of the court upon the one appeal.

In pursuing the course he did, the district judge proceeded apparently upon the assumption that, having exercised his discretionary power to issue the restraining order upon the complaint alone, he should not thereafter hear evidence as to the propriety of issuing the injunction without hearing the whole case upon the merits. Section 6643, Revised Codes, provides: "An injunction order may be granted in the following cases: * * * (2) When it shall appear by the complaint or affidavit that the commission or continuance of some act during the litigation would produce a great or irreparable injury to the plaintiff." The order granting it may be made upon the complaint alone or upon the complaint with affidavits. In either case it must satisfactorily appear that sufficient grounds exist for granting it. (Id., sec. 6644.) "If the court or judge deem it proper that the defendant, or any of the several defendants, should be heard before granting the injunction, an order may be made requiring cause to be shown at a specified time and place, why the injunction should not be granted, and the defendant may in the meantime be restrained. Cause may be shown upon affidavits or oral testimony." (Id., sec. 6647.) "Upon the hearing of a contested application for an injunction order, or to vacate or modify such an order, a verified answer has the effect only of an affidavit." (Id., sec. 6649.) The purpose and office of the restraining order is merely to prevent such injury as may occur before the hearing can be had and inquiry be made as to the truth of the preliminary showing made by the plaintiff. This is its only office. When the hearing has been had, its office is accomplished, and it is without further efficiency. If upon the hearing a *prima facie* case as to the truth of the charges of wrongful conduct by the defendant is not shown, the order should be set aside and the injunction refused. The court having chosen to give the defendants a hearing, it should have adjudged their rights by the case made at the hearing.

The granting or refusing of an injunction in a particular case [1] is lodged in the discretion of the trial court; but this discretion must be exercised according to correct principles of

law and evidence in a case properly presented. (*Bennett Bros. v. Congdon,* 20 Mont. 208, 50 Pac. 556; *Butte & Boston C. M. Co.* v. *Montana Ore Pur. Co.,* 21 Mont. 539, 52 Pac. 375; 22 Cyc. 746.) And if the showing made by the evidence is insufficient to put the power of the court in motion—that is, if the grounds upon which the application is based are not satisfactorily shown to exist—it is beyond the power of the court to put the adverse party under restraint. (*Butte & Boston C. M. Co.* v. *Montana Ore Pur. Co., supra.*) It is not necessary that a case be made [2] which would entitle the plaintiff to relief at all events on final hearing. If he has made out a *prima facie* case, or if upon the showing made it is left doubtful whether or not the plaintiff will suffer irreparable injury before his rights can be fully investigated and determined, the court ought to incline to issue the injunction and preserve the *status quo.*

The equity alleged in the complaint in this case is the repeated trespasses of defendants, accompanied by a threat to continue [3] them, with the result that the plaintiff will be deprived, pending the action, of the use of its lands for grazing purposes, and that the injury thus suffered cannot be adequately compensated in damages. The answer puts directly in issue all the allegations, not only of wrongdoing at any time in the past, but also as to any being done or threatened at the time the action was commenced. In the absence of some evidence on the part of plaintiff to make out a case, it did not show itself entitled to preliminary relief. The denials in the answer, being directly responsive to the allegations of the complaint, were a sufficient showing of cause. (22 Cyc. 945.) Hence at the close of the hearing the court should have denied the injunction, because there was nothing before it to put its discretionary power in motion.

In their briefs counsel have sought to present and have determined the right of defendants to have access to the sections of government land by crossing over the lands belonging to the plaintiff; the defendants insisting that until the plaintiff has marked distinctly the boundaries of each section owned by it,.

and designated the ways by which they may gain access, they ought to enjoy the right to cross plaintiff's lands at will.   Conceding it to be the rule in this state, established by the decisions in *Monroe* v. *Cannon*, 24 Mont. 316, 81 Am. St. Rep. 439, 61 Pac. 863, and *Musselshell Cattle Co.* v. *Woolfolk*, 34 Mont. 126, [4]   85 Pac. 874, "that one who knowingly and willfully drives his stock upon the lands of another, though uninclosed, is guilty of a trespass and must respond in damages at the suit of the latter," they insist, further, that the plaintiff ought not to have relief because it is manifest that it is seeking, by the aid of a court of equity, to prevent defendants from enjoying the privilege of pasturing their stock upon any of the intervening sections of the public lands—a privilege which is accorded to all alike by the federal government—and thus to gain for itself a monopoly in these lands.   It must not be overlooked, however, that the ultimate rights of the parties are not now before this court for decision.   This is an action for damages for a trespass.   It was pointed out in *Musselshell Cattle Co.* v. *Woolfolk, supra*, that in a case in which the trespass complained of is repeated and willful, under circumstances showing that it will be continued and result in damage for which adequate compensation cannot be recovered in an action at law, equity will grant temporary injunctive relief.   In that case the sole question presented was whether a court of equity will interfere by injunction in any case to restrain a trespass.   The question presented by this appeal is whether the plaintiff made out a case which entitled it to the relief granted by the district court.   We have shown that it has not.   To go further and determine the ultimate rights of the parties would be to exercise the functions of the district court.

The sufficiency of the complaint to support a judgment for trespass was not submitted to the district court, nor was it submitted at the hearing in this court; neither was the sufficiency of the answer of the defendants to constitute a defense submitted to, or passed upon by, the district court.   These are questions which must be determined in the first place by it.

46 Mont.—11

For these reasons, the order of the district court is reversed and the cause is remanded.

*Reversed and remanded.*

Mr. Justice Holloway concurs.

Mr. Justice Smith, being absent, did not hear the argument, and takes no part in the foregoing decision.

