JUSTICE LEAPHART
delivered the Opinion of the Court.
¶1 The appellants here are comprised of the Valley Christian School in Missoula , certain high-school students who attend VCS and their parents (collectively referred to as VCS). VCS sought a preliminary injunction preventing the Montana High School Association (MHSA) from enforcing its rule that schools must be accredited to be members. The District Court denied VCS’s motion for a preliminary injunction and subsequent motion to reconsider. VCS now appeals that decision. We affirm.
FACTS
¶2 VCS is a privately run, religious school, providing an education to students in grades Kindergarten through twelve. VCS is limited in the pool of teachers it may hire by its own criteria. VCS’s most important standard is that teachers personally recognize Jesus Christ as their personal Lord and Savior. VCS’s policy requires teachers to integrate the Bible and the teaching of Christ into their daily subject matter. *83 VCS hired Doug Dierking (Dierking) to teach science. Dierking was not certified to teach by the Office of Public Instruction (referred to as OPI or the State). Finding that he lacked moral fitness for the profession due to a previous conviction for cruelty to animals, the State declared Dierking was uncertifiable. Nonetheless, given Dierking’s otherwise excellent credentials and experience teaching at the college level and his philosophical fit with the school, VCS determined Dierking had been “called by God” and hired him.
¶3 In order for a school to be accredited by the State, its teachers must be certified. The State does not require private schools to be accredited, but it will accredit private schools which apply and meet the criteria. MHSA is a private, voluntary association of public and private schools in Montana. MHSA promulgates rules and standards for interscholastic activities. Two MHSA bylaws are of import here. First, MHSA membership is conditioned on state accreditation. Second, an MHSA member school may compete on a one-on-one basis with a non-MHSA member school, but any tournament or activity involving more than two schools shall be comprised only of MHSA members. Thus, when VCS hired Dierking, it not only lost the state accreditation it had maintained for fifteen years, but it also lost its MHSA membership and the ability to compete in certain interscholastic competitions.
¶4 VCS petitioned for a preliminary injunction preventing MHSA from enforcing its membership bylaws against VCS, contending that the bylaws impermissibly burdened its free exercise of religion.
DISCUSSION
¶5 In reviewing an order granting or denying a preliminary injunction we determine whether the district court committed a manifest abuse of its discretion. Shammel v. Canyon Resources Corp., 2003 MT 372, ¶ 12, 319 Mont. 132, ¶ 12, 82 P.3d 912, ¶ 12. A manifest abuse of discretion is one that is obvious, evident or unmistakable. Shammel, ¶ 12. However, where the district court denies injunctive relief based on conclusions of law, no discretion is involved, and we review the conclusions of the law to determine whether they are correct. Hagener v. Wallace, 2002 MT 109, ¶ 12, 309 Mont. 473, ¶ 12, 47 P.3d 847, ¶ 12.
¶6 VCS claims that it has established a prima facie case sufficient to meet any one of the three disjunctive criteria of the preliminary injunction statute. Section 27-19-201, MCA. VCS contends MHSA’s bylaws excessively burden its religious freedom; its fundamental right *84 to determine the upbringing of their children; and its freedom of association. VCS claims infringement of multiple rights creates a hybrid free exercise claim, and that hybrid claims merit strict scrutiny analysis as stated in Employment Division, Dep’t. of Human Resources v. Smith (1990), 494 U.S. 872, 881, 110 S.Ct. 1595, 1601, 108 L.Ed.2d 876, 887.
¶7 VCS alleges that its free exercise of religion is being infringed in violation of the United States and Montana Constitutions. U.S. Const, amend. I.; Art. II, Sec. 5, Mont. Const. A facially neutral regulation impermissibly infringes on the constitutional requirement of government neutrality if it unduly burdens the free exercise of religion. Wisconsin v. Yoder (1972), 406 U.S. 205, 220, 92 S.Ct. 1526, 1536, 32 L.Ed.2d 15, 28. The United States Supreme Court has established the following test for determining whether there is a burden on the free exercise of religion:
Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists.
Thomas v. Review Bd. of Indiana Employment Sec. Division (1981), 450 U.S. 707, 717-18, 101 S.Ct. 1425, 1432, 67 L.Ed.2d 624, 634. For purposes of this appeal, MHSA concedes that, although it is a private association, it meets the criteria of a “state actor.”
¶8 The first part of the Thomas analysis is to determine whether an important benefit is at issue. We have previously recognized the important interest high school students have in extracurricular activities. In Bartmess, we applied a middle tier analysis to determine the rights of a public school student to participate in his school’s extracurricular activities. St. ex rel. Bartmess v. Sch. Dist. No. 1 (1986), 223 Mont. 269, 275, 726 P.2d 801, 804. In Kaptein, we recognized a student in a private school had a constitutionally-recognized interest in participating in a public school’s extracurricular activities, but we upheld as reasonable the public school’s policy of only providing those activities to its students. Kaptein v. Conrad Sch. Dist. (1997), 281 Mont. 152, 931 P.2d 1311. In light of our decisions recognizing the rights of high school students to participate in extracurricular activities, membership and participation in the MHSA is an important benefit.
¶9 Thus, our analysis of VCS’s claimed burden focuses on “conduct proscribed by a religious faith” and conduct “mandated by religious *85 belief.” Thomas, 450 U.S. at 718, 101 S.Ct. at 1432, 67 L.Ed.2d at 634. VCS’s claim is premised on a false dilemma of its own creation. It claims that MHSA’s accreditation bylaw requires it to choose between: (1) hiring Dierking and continuing to provide a Christian education; and (2) participating in MHSA. While the MHSA membership rule very well may put substantial pressure on a private school to hire only certified teachers, this does not violate any religious belief. Nothing before this Court indicates that VCS’s internal standard of hiring teachers of faith precludes it from hiring certified teachers. OPI does not refuse certification to those candidates who are religious. OPI simply refuses to grant certification to candidates with low moral character as evidenced by their criminal record. The record establishes that VCS is able to hire certified or certifiable teachers whose religious beliefs are compatible with VCS. For fifteen years, prior to hiring Dierking, VCS hired certified teachers who presumably met its religious requirements, and for that same fifteen-year period it qualified for state accreditation and membership in the MHSA. The situation presented does not satisfy the Thomas definition of a “burden” on religion. As is evidenced by VCS’s fifteen years of compliance, the requirement that teachers be certified is not “proscribed by religious faith.” Furthermore, the hiring of noncertified teachers (such as Dierking) is not “mandated by religious belief.”
¶10 Our decision here is easily distinguishable from Wisconsin v. Yoder, upon which VCS relies. In Yoder, the United States Supreme Court struck down a Wisconsin statute which burdened the Amish by requiring that all children attend school until the age of sixteen. A central concept to the Amish faith is a fundamental belief that salvation requires life in a church community separate and apart from the world and worldly influence. Yoder, 406 U.S. at 210, 92 S.Ct. at 1530, 32 L.Ed.2d at 22. The Amish religion emphasizes a harmony with nature and the soil, a life of goodness, community welfare, and physical labor. Thus, the Amish allowed their children to attend public school only until the eighth grade, but refused high school because it would impermissibly expose their children to the worldly influence of science, competitiveness and socialization. Yoder, 406 U.S. at 211, 92 S.Ct. at 1531, 32 L.Ed.2d at 22. The United States Supreme Court noted that the Amish showing of a burden upon their religion was one that probably few other religious groups or sects could make. Yoder, 406 U.S. at 235-36, 92 S.Ct. at 1543, 32 L.Ed.2d at 37. Thus, a facially neutral law, applied in a non-discriminatory fashion, and enacted for the general welfare of the citizenry had to yield to the practices of the *86 Amish, because it was incompatible with their religion.
¶11 In contrast to the situation in Yoder, VCS has not shown that its religious beliefs are incompatible with teacher certification. Rather than attempting to preserve a unique religious culture and a right to live apart from the predations and vices of modern society, VCS seeks to fully integrate itself, and allow VCS students to exemplify their Christian ideals in competition with the students of other schools. V CS strives to be of the world, but not bound to its rules.
¶12 The United States Supreme Court has held that the free exercise clause does not imply that incidental effects of government programs which may make it more difficult to practice certain religions, but which have no tendency to coerce individuals into acting contrary to their religious beliefs, require government to bring forward a compelling justification for its otherwise lawful actions. “The crucial word in the constitutional text is ‘prohibit’: ‘For the Free Exercise Clause is written in terms of what the government cannot do to the individual, not in terms of what the individual can exact from the government.’ ” Lyng v. Northwest Indian Cemetery Protective Ass’n. (1988), 485 U.S. 439, 450-51,108 S.Ct. 1319, 1326,99 L.Ed.2d 534, 548 (quoting Sherbert v. Verner (1963), 374 U.S. 398, 412, 83 S.Ct. 1790, 1798, 10 L.Ed.2d 965, 975 (Douglas, J., concurring)).
¶ 13 [3] Even if one assumes arguendo that the MHSA bylaw requiring accreditation of member schools limits VCS’s pool of potential teacher candidates and thereby makes it more difficult for VCS to offer a Christian education, the bylaw does not have a tendency to coerce individuals into acting contrary to their religious beliefs. We find no constitutional basis for VCS’s contention that MHSA should have to yield to VCS’s wish to employ a teacher who, although devoted to VCS’s religious principles, is not certified by OPI.
¶14 Finally, we note that VCS’s “hybrid claim” argument is premised on an assumption that the MHSA bylaws infringe on the free exercise of religion and the exercise of another constitutionally protected right, such as freedom of association. Here, VCS has failed to clear the first hurdle. It has not shown any burden upon the free exercise of religion. Thus, we need not address the hybrid claim.
¶15 The order of the District Court denying the preliminary injunction is affirmed.
CHIEF JUSTICE GRAY, JUSTICES COTTER, REGNIER, WARNER and RICE concur.