No. DA 06-0240

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 254

BENEFIS HEALTHCARE, a Montana
not-for-profit corporation,

Plaintiff and Appellant,

v.

GREAT FALLS CLINIC, LLP, a Montana limited
liability partnership; ESSENTIA HEALTH, a multistate
not-for-profit health care system; CENTRAL MONTANA
SURGERY CENTER, INC., a Montana corporation,
d/b/a CENTRAL MONTANA SURGICAL HOSPITAL;
HAROLD POULSEN, an individual; and MONTANA
DEPARTMENT OF PUBLIC HEALTH AND HUMAN
SERVICES, an administrative agency of the State of Montana,

Defendants and Respondents.

APPEAL FROM:     The District Court of the Eighth Judicial District,
                 In and For the County of Cascade, Cause CDV 06-149,
                 Honorable Wm. Nels Swandal, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                James H. Goetz, J. Devlan Geddes and Trent M. Gardner, Goetz,
                Gallik & Baldwin, P.C., Bozeman, Montana

                Keith R. Anderson and Michael E. Barry, Gardner, Carton & Douglas,
                Chicago, Illinois

        For Respondents:

                Jon J. Kudrna and Robert B. Pfennigs, Jardine, Stephenson,
                Blewett & Weaver, Great Falls, Montana (Great Falls Clinic and Central
                Montana Surgery Center)

                Mona Jamison, Jamison Law Firm, Helena, Montana (Great Falls Clinic
                and Central Montana Surgery Center)

Gregory G. Smith, Smith, Oblander & Mora, Great Falls, Montana (Essentia)

Mark A. Jacobson, Lindquist & Vennum, Minneapolis, Minnesota (Essentia)

Richard F. Gallagher, Gregory R. Schwandt and Glenn E. Tremper, Church, Harris, Johnson & Williams, P.C., Great Falls, Montana (Poulsen)

Russell E. Cater and Lisa Swanson, Department of Public Health and Human Services, Helena, Montana

For Amicus Curiae:

J. Daniel Hoven, Mark R. Taylor and Daniel J. Auerbach, Browning, Kaleczyc, Berry & Hoven, P.C., Helena, Montana (Montana Hospital Association)

Submitted on Briefs: June 20, 2006

Decided: October 4, 2006

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1　Benefis Healthcare (Benefis) appeals the order denying its request for a preliminary injunction against the Respondents entered in the Eighth Judicial District Court, Cascade County.  We affirm.

¶2　We consider the following issue on appeal:

¶3　Did the District Court manifestly abuse its discretion by denying Benefis's request for a preliminary injunction?

## BACKGROUND

¶4　Benefis is a non-profit corporation operating a hospital comprised of two campuses in Great Falls.  In total, the hospital has 502 beds, and it serves as the regional referral center for an area of 45,000 square miles.  Benefis was formed in 1996 by the merger of Columbus Hospital and the Montana Deaconess Medical Center, and it operates under the terms and conditions of a Certificate of Public Advantage issued by the Montana Department of Justice (DOJ).  Benefis may not terminate or reduce any services that were provided by the two constituent hospitals prior to the merger without approval from DOJ.  The hospital enjoys designation as the sole community hospital for purposes of Medicare and Medicaid.

¶5　Central Montana Surgery Center, Inc. (doing business as Central Montana Surgical Hospital and as Central Montana Hospital) (CMSH), operates a twenty-bed hospital in Great Falls pursuant to hospital licensing originally obtained in October 2002.  Harold L. Poulsen, a businessman, owns the facility in which CMSH operates, and he

3

leases it to CMSH. At the time of the District Court's order denying the preliminary injunction, Poulsen also owned 74 percent of the stock of CMSH; the balance of the shares were owned by fourteen other individuals, some of whom are physicians.

¶6 Great Falls Clinic, LLP (Clinic), is a multi-specialty medical group in Great Falls that is owned by its physicians. Essentia Health (Essentia) is a non-profit multi-state health care system operating several hospitals, clinics, and long-term care facilities. The Clinic and Essentia have formed a joint venture, Montana Health Partners, LLC (Clinic/Essentia), in which each has a 50 percent stake.

¶7 On January 25, 2006, the Clinic announced plans to "acquire the Central Montana Surgical Hospital in partnership with Essentia Health." Benefis filed a complaint in the District Court on January 31, 2006, alleging that the proposed transaction would change the ownership of CMSH or of its hospital license and that such a change is prohibited under § 50-5-201, MCA (prohibiting transfer of hospital licenses), and § 50-5-245, MCA (placing a moratorium on the issuance of hospital licenses to "specialty" hospitals until July 1, 2007). In its complaint Benefis requested preliminary and permanent injunctive relief that would prevent any change in ownership of CMSH unless CMSH surrendered its hospital license. Concurrent with the filing of its complaint, Benefis filed a motion for a temporary restraining order and a preliminary injunction requesting the same relief as in its complaint. Later that day, the District Court granted the temporary restraining order.

¶8 After the issuance of the temporary restraining order, CMSH relinquished its old license and applied for a new hospital license to be used by CMSH after Clinic/Essentia

4

purchased CMSH's stock. In its application process, CMSH informed Roy Kemp (Kemp), the Licensing Bureau Chief for Health Care Facilities at the Department of Public Health and Human Services (DPHHS), that after the transaction it would be operating the hospital as a "general" hospital, not as a "specialty" hospital. Kemp testified at a March 9, 2006, hearing on the motion for the preliminary injunction that he had not received a request for a hospital application since before the state moratorium on specialty hospitals had come into effect in 2005, so he altered the application form to reflect the new requirements. DPHHS issued a provisional license to CMSH under the assumed business name Central Montana Hospital on February 10, 2006.

¶9 Benefis subsequently amended its complaint, requesting that the District Court void the new license and require DPHHS to institute a process for determining whether a license applicant is a specialty hospital. In addition, Benefis prayed that the District Court direct that the public be allowed to participate in licensing decisions that are of significant interest to the public. In an order dated March 23, 2006, the District Court denied the motion for a preliminary injunction and dissolved the temporary restraining order.

¶10 Shortly after the District Court issued its order denying the preliminary injunction, Clinic/Essentia purchased all of the outstanding shares of CMSH from Poulsen and the other shareholders. Benefis appeals the District Court's order denying its motion for a preliminary injunction.

5

STANDARD OF REVIEW

¶11 *Valley Christian School v. High School*, 2004 MT 41, ¶ 5, 320 Mont. 81, ¶ 5, 86 P.3d 554, ¶ 5, described the relevant standard of review:

> In reviewing an order granting or denying a preliminary injunction we determine whether the district court committed a manifest abuse of its discretion. *Shammel v. Canyon Resources Corp.*, 2003 MT 372, ¶ 12, 319 Mont. 132, ¶ 12, 82 P.3d 912, ¶ 12. A manifest abuse of discretion is one that is obvious, evident or unmistakable. *Shammel*, ¶ 12. However, where the district court denies injunctive relief based on conclusions of law, no discretion is involved, and we review the conclusions of the law to determine whether they are correct. *Hagener v. Wallace*, 2002 MT 109, ¶ 12, 309 Mont. 473, ¶ 12, 47 P.3d 847, ¶ 12.

DISCUSSION

¶12 **Did the District Court manifestly abuse its discretion by denying Benefis's request for a preliminary injunction?**

¶13 A district court's refusal to grant an injunction is an appealable order. M. R. App. P. 1(b)(2). Section 27-19-201, MCA, governs when a preliminary injunction may be granted:

> An injunction order may be granted in the following cases:
> (1) when it appears that the applicant is entitled to the relief demanded and the relief or any part of the relief consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually;
> (2) when it appears that the commission or continuance of some act during the litigation would produce a great or irreparable injury to the applicant;
> (3) when it appears during the litigation that the adverse party is doing or threatens or is about to do or is procuring or suffering to be done some act in violation of the applicant's rights, respecting the subject of the action, and tending to render the judgment ineffectual; . . . .

6

¶14 In *Porter v. K & S Partnership*, 192 Mont. 175, 181, 627 P.2d 836, 839 (1981), this Court elaborated that:

> An applicant for a preliminary injunction must establish a prima facie case, or show that it is at least doubtful whether or not he will suffer irreparable injury before his rights can be fully litigated. If either showing is made, then courts are inclined to issue the preliminary injunction to preserve the status quo pending trial. *Rea Bros. Sheep Co. v. Rudi* (1912), 46 Mont. 149, 160, 127 P. 85, 87.
>
> "Status quo" has been defined as follows:
>
> "'. . . the last actual, peaceable, noncontested condition which preceded the pending controversy . . .'" *State v. Sutton* (1946), 2 Wash.2d 523, 98 P.2d 680, 684; *State v. Oldham* (1978), 283 Or. 511, 584 P.2d 741, 743. *See also* 40 Words and Phrases, "Status Quo".

In addition, "it is the court's duty to minimize the injury or damage to all parties to the controversy." *Porter*, 192 Mont. at 182, 627 P.2d at 840.

¶15 Benefis makes a threefold argument, which we have reordered here for convenience. First, Benefis asserts that CMSH historically has been a specialty hospital as that term is defined in § 50-5-245, MCA, which incorporates the definition from 42 U.S.C. § 1395nn (the Stark Act). According to Benefis, CMSH was a "grandfathered" specialty hospital, but CMSH would have lost its grandfathered status at the time physician ownership of CMSH increased as a result of the purchase of shares by the physician-owned Clinic (via its joint venture with Essentia).[1] Because there is a

---

[1] In this regard, the language employed by the parties, the witnesses below, and the District Court is confusing and inconsistent. For CMSH to have been operating as a "specialty" hospital, it must have satisfied the criteria in 42 U.S.C. § 1395nn, which prior to the commencement of this action, all agree it did not. However, throughout the briefing, the District Court's order, and the record there are references to CMSH being a

moratorium on the issuance of licenses to specialty hospitals, and Benefis asserts that CMSH is such, Benefis thus claims that the new license is invalid.

¶16 Second, Benefis argues that, absent a preliminary injunction, it will suffer irreparable injury. Benefis asserts that the physician owners of CMSH will refer high profit margin patient procedures to CMSH rather than to Benefis, resulting in a loss of revenue to Benefis that will inevitably force Benefis to reduce or discontinue its low margin or charity services. In addition, Benefis avers that it stands to lose its designation as the sole community hospital under Medicare and Medicaid, resulting in a loss of millions of dollars of supplemental funding.

¶17 Finally, Benefis contends that DPHHS violated its right to participate in the operation of government agencies—which it argues is secured by Article II, Section 8 of the Montana Constitution—by issuing the new hospital license to CMSH without receiving public comment and that the District Court erred in concluding otherwise. Benefis argues that the issuance of new hospital licenses is of "significant public interest" and is not a mere ministerial act and that the alleged violation of Benefis's constitutional right is of itself an irreparable injury.

¶18 Benefis properly directs these three arguments toward the standards in § 27-19-201, MCA, quoted above. However, Benefis goes further than asserting that the District Court erred by denying its request for a preliminary injunction. Benefis maintains that

"grandfathered" specialty hospital. We presume this means that, but for the federal exclusion of those entities established prior to November 18, 2003, from its definition of "specialty hospitals," *see* ¶¶ 21-24, CMSH would have qualified under the federal definition.

the District Court's errors of law on these points are so apparent and so critical to the underlying case that this Court should simply enter judgment on the merits of the case in favor of Benefis without remand.

¶19   As we begin our analysis, we emphasize that, with regard to preliminary injunctions, "findings and conclusions directed toward the resolution of the ultimate issues are properly reserved for trial on the merits," *Yockey v. Kearns Properties, LLC*, 2005 MT 27, ¶ 18, 326 Mont. 28, ¶ 18, 106 P.3d 1185, ¶ 18, and that a "preliminary injunction does not determine the merits of the case . . . ." *Yockey*, ¶ 18.  We want to be very clear that our analysis below is not intended to express and does not express any opinion about the ultimate merits of the individual issues or of the case.  If our analysis appears to equivocate on matters of law related to the underlying claims, it does so as a consequence of the procedural posture of the case and of our duty to avoid resolving the merits of these issues.  Our task is not to resolve the substantive matters of law relevant to the ultimate resolution of Benefis's complaint by the District Court; it is to inquire whether the District Court manifestly abused its discretion by denying Benefis's motion for a preliminary injunction.

*Specialty Hospital*

¶20   Benefis makes a complex statutory argument.  The federal Stark Act placed a moratorium on physician referrals to specialty hospitals in which those physicians have an ownership or investment interest.  42 U.S.C. § 1395nn.  The Stark Act excluded from its definition of "specialty hospital" hospitals that, *inter alia*, were in existence on

9

November 18, 2003, "for which the number of physician investors at any time on or after such date is no greater than the number of such investors as of such date[.]" 42 U.S.C. § 1395nn(h)(7)(B)(ii). However, this moratorium expired on June 8, 2005. Compiler's Comments, § 50-5-245, MCA. Section 50-5-245, MCA, enacted by the Montana Legislature on April 21, 2005, placed a moratorium on licensing specialty hospitals until July 1, 2007, and it incorporated the definition of specialty hospitals described in 42 U.S.C. § 1395nn. The uncodified Section 5 of the Montana law specified that the act applies only to specialty hospitals "to be established" after the federal moratorium expires. 2005 Mont. Laws, Ch. 365.

¶21 Benefis contends that CMSH was "grandfathered in" such that—under its previous hospital license and its previous ownership—it was not subject to either the federal or state moratoriums, but that it lost such status when it voluntarily surrendered its hospital license to DPHHS. Furthermore, Benefis argues that CMSH would have lost its grandfathered status upon the occurrence of the stock transfer because the number of physician owners would have increased via the physician-owned Clinic's involvement. Benefis asserts that, upon loss of its grandfathered status, CMSH qualifies under § 50-5-245, MCA, as a specialty hospital and, therefore, cannot rightfully obtain a new license. In response to this argument, the District Court ruled that it "appears unlikely that Benefis can meet the requirement of §27-19-201(1), MCA which requires that it make a

10

prima facie case of entitlement to the injunction on the basis of its interpretation of §§ 50-5-201 and 50-5-245, MCA."[2]

¶22     As a necessary threshold matter, Benefis must show that it has a legitimate cause of action under Title 50, Chapter 5, Montana Code Annotated, which has no explicit provision affording private parties standing to enforce the public health laws at issue here.  For example, § 50-1-103, MCA, explicitly vests the power to enforce the public health laws in DPHHS, the various county attorneys, and the Attorney General (the head of DOJ).  Also, §§ 50-5-108(2) and 50-5-112, MCA, give DPHHS the power to enjoin any violation of a license provision under parts 1 or 2 of Chapter 5 or to petition a court for imposition of a civil penalty for violation of those parts.  As Essentia has argued, private parties are not mentioned in the statutory scheme as potential plaintiffs, and this observation aligns with the District Court's determination that "it does not appear that any defendant is violating Benefis' rights . . . ."  We also note that DOJ has not joined this action or—to this Court's knowledge—otherwise sought to prevent the licensing or operation of CMSH, despite its apparent statutory authorization to enforce public health laws and despite its involvement in the oversight of Benefis via the Certificate of Public Advantage.

¶23     Benefis's statutory argument would require a conclusion that a facility in existence prior to the federal moratorium and exempted therefrom nonetheless loses its

---

[2]Benefis also argued below that CMSH was required to surrender its license because the stock sale amounted to an unlawful transfer of a hospital license under § 50-5-201, MCA.  However, Benefis does not argue this on appeal, so we do not consider it.

11

grandfathered status when it surrenders its license and applies for a new one. According to Benefis, this status is lost and a new license may not be issued despite the uncodified statutory language stating that Montana's moratorium applies only to specialty hospitals "to be established" after the expiration of the federal moratorium, 2005 Mont. Laws, Ch. 365, Section 5, and despite CMSH's existence prior thereto. Thus, Benefis must ultimately persuade the District Court that CMSH only became "established" as a specialty hospital at the time that it relinquished its previous hospital license—a conclusion not immediately obvious from a reading of the plain language of the statute. Further, in order to succeed in the case below, Benefis must show that the state moratorium applies to CMSH's application for a new license, even though CMSH has averred that it will be operating as a general hospital—not as a specialty hospital—under the new license. Given the difficulty of Benefis's task in these regards, we cannot conclude that the District Court manifestly abused its discretion by denying the requested preliminary injunction with regard to Benefis's statutory argument.

*Irreparable Injury*

¶24 Benefis asserts that it will lose high profit margin patient procedures and government funding as a result of CMSH operating under the control of Clinic/Essentia, forcing it to discontinue some services. Upon this assertion, Benefis contends that the community will lose access to services and thus sustain losses that cannot be remedied by a damage award.

¶25    The District Court concluded that Benefis did not meet its burden to show that it would suffer irreparable injury, or that what injury it may suffer will occur during the pendency of the litigation. In addition, the District Court determined that "it does not appear that any defendant is violating Benefis' rights . . . ." Benefis challenges the District Court's conclusion by arguing in its briefing that damages will not be available to remedy its perceived injury:

> [T]here is no vehicle whereby Benefit [sic] can recover damages for [the loss of its status as sole community hospital] in an action at law. That is likewise true of the other monetary losses—they are quantifiable but not recoverable in any possible action at law.

By such an assertion, Benefis appears to concede that no Respondent is violating any of Benefis's rights.[3] If monetary losses are quantifiable but not recoverable in any action at law, it is difficult to perceive how a change in ownership of CMSH stock or the issuance of a new license to CMSH can be the legal cause of any injury—let alone irreparable injury—to Benefis. Moreover, Benefis's novel argument that *the community* would suffer irreparable injury from a lack of available services should a preliminary injunction not issue simply does not comport with the statutory requirement under § 27-19-201, MCA, that the *applicant* for the injunction be at risk for irreparable injury.

¶26    Without evidence demonstrating, beyond mere speculation, that Benefis stands to suffer some injury that would be irremediable by a future award of legal or equitable relief, we cannot conclude that the District Court erred by abusing its discretion in a way

---

[3]We refer here to rights other than the asserted right to participate in agency actions, which we consider below.

13

that was "obvious, evident or unmistakable." *Valley Christian*, ¶ 5. Therefore, we conclude there was no manifest abuse of discretion by the District Court on this point.

*Public Participation*

¶27 Benefis contends that the issue of licensing specialty hospitals is a matter of "significant public interest" such that it had the right to participate under Article II, Section 8, Montana Constitution, along with the public at large, in DPHHS's decision to issue the new license to CMSH. Benefis maintains that the key inquiry for whether an agency action is "ministerial"—that is, one in which the public has no right to participate, *see* § 2-3-112(3), MCA—or one of "significant public interest" is whether the decision involved the exercise of judgment. Benefis argues that, in evaluating CMSH's application for a new license, Kemp "was faced with deciding whether the newly purchased facility would operate as a specialty hospital" and that this evaluation required the exercise of judgment. The exercise of judgment, according to Benefis, hinged on Kemp's perception of the Stark Act's definition of "specialty hospital," specifically the language that states that a specialty hospital is one "primarily or exclusively" engaged in the care and treatment of patients with a cardiac condition, patients with an orthopedic condition, or patients receiving a surgical procedure. *See* 42 U.S.C. § 1395nn(h)(7)(A). Because DPHHS had not promulgated regulations on what "primarily" means in this context, Benefis argues that Kemp made an "*ad hoc*" determination that CMSH would not be operating as a specialty hospital and "personally created a new licensing process." As a result, Benefis contends that its alleged constitutional right to participate in the

14

agency decision to issue a provisional license to CMSH was offended by Kemp's action. Benefis thus argues that a violation of a constitutional right is an irreparable injury and that the District Court's denial of its motion for a preliminary injunction was therefore in error.

¶28 Benefis's argument, the procedural posture of this case, and the breadth of the District Court's determination on this issue complicate this Court's task. The District Court issued an unequivocal conclusion of law that the issuance of the new license was a ministerial act and, in doing so, the District Court inappropriately resolved an ultimate issue of the case. However, inherent in the District Court's conclusion is its assessment that it does not appear that Benefis will be irreparably injured. *See* § 27-19-201(2), MCA. Benefis's argument on appeal is not that the District Court manifestly abused its discretion by exceeding the bounds of § 27-19-201(2), MCA, and resolving an ultimate issue of the case; rather, Benefis encourages this Court to commit the same overreaching as the District Court but with a more favorable conclusion of law. As we emphasized in ¶ 19, we do not express any opinion on the merits of the underlying case, but address only the question of whether the District Court manifestly abused its discretion by concluding that it does not appear that Benefis would suffer irreparable injury absent a preliminary injunction.

¶29 There is no express statutory requirement for DPHHS to permit public participation in licensing matters, and the District Court relied upon our holding in *Kadillak v. Anaconda Co.*, 184 Mont. 127, 141, 602 P.2d 147, 155 (1979)—which held

15

that there is no independent right of participation where the Legislature has not provided for public participation in an agency's decision-making process—to conclude no right to participate was at issue here. Though Benefis argues that our holding in *Kadillak* is "no longer good law" and that our decision in *Jones v. County of Missoula*, 2006 MT 2, 330 Mont. 205, 127 P.3d 406 (holding that Missoula County's decision regarding the availability of health care benefits for same-sex domestic partners of county employees was of significant public interest), superseded *Kadillak*, we note that the *Jones* inquiry regarding "significant public interest" was fact-intensive,[4] making it particularly difficult, in the context of a request for a preliminary injunction, for this Court to find fault with the District Court's reliance on our precedent in its application of the law.

¶30   In addition, Benefis's argument that DPHHS can adopt rules that "enable DPHHS to decide *which applications were for specialty hospitals and which were not*" (emphasis added) and provide for public participation on the specialty/general distinction "without unnecessary interference to *general hospital* licensing procedures" (emphasis added) is unpersuasive, if not disingenuous. Benefis assumes the conclusion that CMSH is actually a specialty hospital and would not qualify as a general hospital, but *every* hospital would have to go through the posited DPHHS procedure at some point, either in initial licensing or in renewal licensing, or both, just like CMSH. Thus, it seems likely that the rules

---

[4]This Court's decision in *Jones* relied on the amount of public attention directed toward our previous decision in *Snetsinger v. Mont. Univ. Sys.*, 2004 MT 390, 325 Mont. 148, 104 P.3d 445, addressing an issue similar to that in *Jones*; the introduction of a bill in the House of Representatives for the purpose of authorizing civil unions in Montana; and the turnout at a hearing on the bill of hundreds of opponents to it. *See Jones*, ¶¶ 19-21.

Benefis wants the courts to impose would, of necessity, interfere with even the most routine of general hospital licensing procedures, an impact beyond the confines of this case. Yet, Benefis does not argue that licensing of hospitals generally is an issue of significant public interest—only that the licensing of specialty hospitals is a significant issue. Here, Benefis engages in a curious bit of circuity. One would have to assume the conclusion that a particular applicant is a specialty hospital in order for its potential licensure to become an issue of significant public interest, but if the conclusion has been assumed, then there is little need for public participation on the matter.

¶31 DPHHS has been given very limited statutory direction in the licensing of hospitals. Whatever DPHHS's particular obligations in evaluating whether license applicants are specialty hospitals or general hospitals may be, we cannot say, based upon Benefis's arguments, that those obligations have clearly been violated. Thus, in keeping with the limitations of our review, we cannot conclude that the District Court manifestly abused its discretion by denying Benefis's motion with respect to its public participation argument.

¶32 One further comment is in order. The District Court correctly noted that its obligation was "to determine the likelihood of success on the merits without making any final determination which should be made only after a trial on the merits." However, as we observed in ¶ 28, the District Court went on to make conclusions of law that engaged Benefis's statutory and constitutional arguments on their merits, making specific interpretations of both the federal and state laws and applying them to the case. It was

17

inappropriate for the District Court to make such conclusions at this stage of the proceedings, and we implore trial courts to keep in mind the standards outlined in § 27-19-201, MCA, when ruling on motions for preliminary injunctions and to be careful not to resolve ultimate issues of the case. *See Yockey*, ¶ 18. For similar reasons, we perceive Benefis's request for entry of judgment in its favor to be inappropriate at this point in the proceedings, and this would be true even if this Court were inclined to reverse the District Court's order. Despite the inappropriate breadth of the District Court's determinations, we affirm its general conclusion regarding the probability of Benefis's success on the merits.

## CONCLUSION

¶33 We hold that the District Court did not manifestly abuse its discretion in denying Benefis's request for a preliminary injunction.

¶34 Affirmed.

/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ GARY L. DAY
      District Judge, sitting for Justice Patricia O. Cotter

18

Justice Brian Morris dissents.

¶35 The Court minimizes the potential for irreparable harm to befall upon Benefis and the community of Great Falls in the event that the Clinic succeeds in skimming higher revenue, and better insured patients from the general community hospital. The fact that doctor owned specialty hospitals siphon more lucrative cases from general community hospitals and thereby potentially imperil the ability of general community hospitals to provide their safety net of charitable services, services to the poor, and other services that do not pay their own way raises the specter of irreparable harm that we should not ignore. *See* Medicare Payment Advisory Commission, *Report to Congress: Physician-Owned Specialty Hospitals,* http://medpac.gov/publications/congressional_reports/Mar05_Spec Hospitals.pdf (March 2005). The Legislature took note of this concern in 2005 when it enacted the Montana specialty hospital moratorium. *See* § 50-5-245, MCA.

¶36 These concerns highlight the need to assess these issues carefully without the imposition of a deadline artificially imposed by the Clinic as it races to consummate its merger. DPHHS allowed the Clinic to circumvent public scrutiny, however, when it disregarded the mandate of Article II, Section 8, of the Montana Constitution, by not holding any public hearings on the matter. DPHHS's claims that its decision to license the Clinic constituted a nondiscretionary ministerial act ring hollow in light of the fact that DPHHS implemented a new hospital license application form to accommodate the Clinic's new application. The Court acknowledges that the District Court "inappropriately resolved an ultimate issue" when it deemed DPHHS's decision to

19

license the Clinic to be a "ministerial act." ¶ 28. The Court does not tamper with the District Court's order, however, in light of the "fact-intensive" inquiry as to whether a matter constitutes an issue of "significant public interest." ¶ 29.

¶37 The Court repeatedly has emphasized that Article II, Section 8 "guarantees citizens the right of participation in the operation of government agencies prior to the making of a final decision." *Jones v. County of Missoula*, 2006 MT 2, ¶ 14, 330 Mont. 205, ¶ 14, 127 P.3d 406, ¶ 14. As the Court noted in *Jones*, "Section 2-3-103(1), MCA, requires each public agency to adopt policies that permit and encourage public participation in agency decisions and also to assure adequate notice is given before a final agency action of significant public interest is taken." *Jones*, ¶ 14. The statute itself mandates public participation in agency decisions regarding matters that "are of significant interest to the public." Section 2-3-103(1)(a), MCA. The Court in *Jones* adopted the Attorney General's definition of the term "significant public interest" as "'any non-ministerial decision or action of a county commission which has meaning to or affects a portion of the community.'" *Jones*, ¶ 16 (quoting 47 Mont. Op. No. 13 Atty. Gen. at 6).

¶38 The District Court conceded that DPHHS's issuance of a hospital license to the Clinic "may have been of particular interest to the parties." The District Court remarkably concluded, however, that such interest did not necessarily translate into constituting a matter of "significant interest to the public at large." As discussed in *Jones*, the term "significant public interest" encompasses those non-ministerial decisions

20

or actions taken by a public agency that "has meaning to or affects *a portion of the community*." *Jones*, ¶ 16 (emphasis added). DPHHS's decision to issue a license to the Clinic would qualify as a matter of significant public interest under this criterion. Those portions of the community having to rely on Medicare, Medicaid, or other forms of public assistance in paying for their health care, accepted only at general community hospitals, likely would find DPHHS's decision to license the Clinic to be a matter of significant public interest.

¶39 The District Court circumvented this problem by deeming DPHHS's decision to license the Clinic as a non-discretionary ministerial act and therefore exempt from the public participation requirements by § 2-3-112(3), MCA. In reaching this conclusion, the court seemed to rely on the fact that DPHHS's decision to issue the license was not "legislative" in nature. A ministerial act is "one performed pursuant to legal authority, and requiring no exercise of judgment." *Jones*, ¶ 16.

¶40 Section 50-5-245, MCA, provides DPHHS with the legal authority to issue a new license to the Clinic. The statute refers to the federal law set forth at 42 U.S.C. § 1395nn for the definition of a "specialty hospital." Section 50-5-245(2), MCA. The federal law, in turn, defines a "specialty hospital" as one "primarily or exclusively" engaged in the care and treatment of certain specialized categories of services. 42 U.S.C. § 1395nn. Thus, as a threshold matter, it appears that DPHHS had to determine whether the Clinic would operate as a specialty hospital in evaluating its license application. DPHHS had not adopted any regulations at that time, however, by which it could evaluate whether the

Clinic would operate as a specialty hospital. Instead DPHHS had to proceed on *ad hoc* basis. In fact, DPHHS possessed no hospital license application form that could be used by the Clinic. DPHHS had to modify its existing hospital license application form to account for the Legislature's specialty hospital moratorium.

¶41 DPHHS never bothered to subject this revised license application form to rulemaking requirements of the Montana Administrative Procedure Act, §§ 2-4-101 through -410, MCA. We faulted the Department of Natural Resources and Conservation for failing to "codify a rule outlining when groundwater is 'immediately or directly connected to surface water' through MAPA rulemaking process." *Montana Trout Unlimited v. Montana DNRC*, 2006 MT 72, ¶ 26, 331 Mont. 483, ¶ 26, 133 P.3d 224, ¶ 26. We specifically rejected DNRC's attempts to avoid formal rulemaking through a letter issued by its director. *Trout Unlimited*, ¶ 27.

¶42 DPHHS's actions here are equally unjustified. DPHHS altered its existing hospital license application form to accommodate the Clinic's application. DPHHS has yet to adopt detailed rules and regulations implementing § 50-5-245, MCA. For instance, DPHHS has not yet adopted rules and regulations to define the term "primarily" as used in the moratorium to define those hospitals engaged in the care and treatment of certain specialized categories of service. This failure to define "primarily" forced DPHHS to proceed with the Clinic's application on an *ad hoc* basis. DPHHS could not state definitively whether a hospital doing 98 percent surgery "should be requesting a specialty hospital application." Kemp nevertheless testified that, in his view, hospitals performing

22

85 percent surgery or 76 percent surgery should be classified as specialty hospitals. DPHHS has no idea what percent of the Clinic's work will be surgery as DPHHS's application never required the Clinic to disclose such information. DPHHS's modified application simply allowed the applicant, in this case the Clinic, to claim that it would be a general hospital. The Clinic made this claim despite testimony from Dr. Zismer that the Clinic had no "definitive plan now" to make the transition from a specialty hospital to a general hospital.

¶43 I would reverse the order of the District Court and grant Benefis's motion for a preliminary injunction to preserve the *status quo* pending the resolution of Benefis's action for a declaratory judgment. We have defined the *status quo* as "the last actual, peaceable, noncontested condition which preceded the pending controversy." *Sweet Grass Farms, Ltd. v. Board of County Commrs.*, 2000 MT 147, ¶ 28, 300 Mont. 66, ¶ 28, 2 P.3d 825, ¶ 28. This controversy started on January 31, 2006, when Benefis filed its action. Benefis filed its action before the Clinic rushed to consummate its transaction to "acquire the Central Montana Surgical Hospital in partnership with Essentia Health," and before DPHHS had issued a new license to the Clinic. I respectfully dissent from the Court's failure to restore the *status quo*.

/S/ BRIAN MORRIS

Justices James C. Nelson and W. William Leaphart join in the foregoing dissent.

/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON

23