DA 10-0381

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 108

STATE OF MONTANA,

      Plaintiff and Appellee,

    v.

BNSF RAILWAY COMPANY, formerly known as The Burlington Northern and Santa Fe Railway Company, a Delaware Corporation,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Tenth Judicial District,
In and For the County of Fergus, Cause No. DV 09-129
Honorable John C. McKeon, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Randy J. Cox and Matthew B. Hayhurst, Boone Karlberg, P.C., Missoula, Montana

      For Appellee:

          Steve Bullock, Montana Attorney General; Anthony Johnstone, State Solicitor; Chuck Munson, Assistant Attorney General, Helena, Montana

          A. Clifford Edwards, Roger W. Frickle, Philip McGrady; Edwards, Frickle & Culver, Billings, Montana

Submitted on Briefs:   April 13, 2011
Decided:   May 17, 2011

Filed:

          _____
                         Clerk

FILED

May 17 2011

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     BNSF Railway Company (BNSF) appeals from an order of the Tenth Judicial District Court, Fergus County, granting the State of Montana's (the State) application for a preliminary injunction.  We reverse and remand.

## HISTORY

¶2     Before addressing the present controversy between the State and BNSF, we must first discuss the lengthy and litigious history between the State and BNSF.  In the early 1980s, the State sued BNSF in state court to prevent BNSF from abandoning a section of railroad known as the Geraldine Line. The result of that suit was a 1984 Settlement Agreement ("1984 Agreement") between the State and BNSF,[1] wherein BNSF agreed to donate the Geraldine Line to the State and the State agreed to obtain a short line operator to perform rail services on the Geraldine Line.  Under the 1984 Agreement, BNSF also agreed to pay the short line operator on a per-car basis.  That provision is Section 9 of the 1984 Agreement:

> Section 9.  Short Line Arrangement
>
> 9.1   The parties contemplate that the State will obtain a short line railroad operator to perform rail services on the Spring Creek Junction to Geraldine Line following [BNSF's] donation of this trackage to the State under Section 8.1 hereof.
>
> 9.2   The State agrees that it will require its short line operator to enter into an agreement for the interchange of railroad cars with [BNSF] in the form and substance attached hereto as APPENDIX "B."   The APPENDIX "B" agreement provides, and the parties hereto agree, that . . .
>
> > (b)   [BNSF] will pay the short line $275 per loaded car for each car handled in interchange with short line;

---

[1] The State and BNSF are the only parties to the 1984 Agreement.

(c) the $275 per car charge will be subject to an annual inflationary adjustment . . .

¶3 Central Montana Rail, Inc. ("CMR") was chosen as the short line operator, and on June 30, 1986, CMR entered into an Interchange Agreement with BNSF ("1986 Agreement").[2] The 1986 Agreement followed the "form and substance" of APPENDIX B to the 1984 Agreement. Both APPENDIX B and the 1986 Agreement contain an arbitration clause and a termination provision, however the 1984 Agreement had neither.

¶4 In 2005, CMR sued BNSF alleging 1) breach of contract, based upon BNSF's alleged breach of the 1984 Agreement, 2) tortious interference, and 3) negligent misrepresentation (*CMR I*).[3] CMR sued individually, and as the "full assignee of the STATE OF MONTANA, of all jurisdictional and substantive legal rights the State of Montana possesses against BNSF Railway Company in this case." (Capitalization in original.) The assignment specifically assigned to CMR "all of the State's rights under paragraph 9 [Section 9]" of the 1984 Agreement. *CMR I* was removed to federal court.

¶5 In 2007, during the pendency of *CMR I*, BNSF sought to terminate the 1986 Agreement with CMR, including the per-car payments to CMR under that agreement, and demanded arbitration. CMR, both individually and as the State's assignee, filed suit in federal court seeking to enjoin arbitration of the 1986 Agreement (*CMR II*).[4] CMR claimed that BNSF could not terminate per-car payments because it would violate the 1984

---

[2] CMR and BNSF are the only parties to the 1986 Agreement.
[3] CV-05-116-GF-RKS.
[4] CV-07-120-GF-RFC.

Agreement, and sought a temporary restraining order ("TRO") and a preliminary injunction. A TRO was denied and a hearing held on the preliminary injunction application. CMR argued the 1984 Agreement controlled the interpretation of the 1986 Agreement. The federal court found that the 1984 and 1986 Agreements were "multiple contracts relating to the same matters and between the same parties" and, under Montana law, are "taken together." That interrelationship did not, however, allow the federal court to eliminate the arbitration clause from the 1986 Agreement, as CMR urged. Arbitration was compelled, and *CMR II* was concluded.

¶6 Arbitration proceeded on the termination of per-car payment issue. CMR argued that BNSF could not terminate the 1986 Agreement because the 1984 Agreement required it, and its per-car payment provisions. On May 15, 2009, the three member arbitration panel issued its decision. It found unanimously that BNSF was entitled to terminate the 1986 Agreement. The majority found that upon termination of the 1986 Agreement, the per-car payment methodology also terminated, and that future payments should be made pursuant to a Rule 11[5] arrangement. The arbitration award was confirmed in *CMR I* on July 30, 2009.

¶7 While arbitration was pending, however, BNSF moved to dismiss Counts II and III of CMR's complaint in *CMR I*. On March 12, 2009, the federal court granted BNSF's motion, finding those counts were preempted by the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § 10101 *et seq*.

---

[5] Rule 11 refers to an accounting rule published by the Association of American Railroads. Rule 11 arrangements are typically used in the absence of interchange agreements between a major carrier and a short line.

4

¶8 On August 25, 2009, BNSF moved for summary judgment on Count I of CMR's complaint in *CMR I*, the State's breach of contract claim regarding the 1984 Agreement. CMR did not respond on the merits, but filed 1) a Notice to the Court of Termination of Assignment and Notice that the Issues Currently Pending Before the Court are Moot on October 19, 2009, and 2) a motion for voluntary dismissal pursuant to Fed. R. Civ. P. 41(a)(2) on November 16, 2009. BNSF opposed dismissal and sought ruling on its summary judgment motion. While these motions were pending in federal court, the State filed the present case in state court in November 2009.

¶9 The federal court granted BNSF's motion for summary judgment and denied CMR's motion for voluntary dismissal on April 13, 2010, finding that "[t]o do otherwise would be to allow the State of Montana to manipulate the judicial process with its attempt to dismiss its case after it is clearly lost, and defiantly litigate issues in State court which were already fully, fairly, and finally litigated, with the State of Montana's consent, in this Court." Regarding the Rule 41 motion, it found the State was attempting to re-litigate in State court "payment on a per-car basis, something that was already litigated and decided in the present case." It declared its rulings "<u>binding</u>, not only on CMR, but on the State of Montana, who permitted CMR to litigate for nearly four years on its behalf." (Emphasis in original.) For these reasons, CMR's motion was denied.

¶10 Regarding BNSF's summary judgment motion, the federal court found that CMR could not recover damages individually because the 1984 Agreement prohibits third parties from recovering, and that neither CMR or the State could recover alleged highway damages

because the claim they were based upon was dismissed and because damages for breach of contract are expectancy damages, or "what the party would receive if the contract were performed." Final judgment was entered against CMR on April 13, 2010.

¶11 CMR appealed three issues from *CMR I* – 1) the confirmation of the arbitration award, 2) denial of its motion to dismiss, and 3) the award of summary judgment to BNSF. The Ninth Circuit Court of Appeals affirmed on all issues in a memorandum decision on March 18, 2011.[6]

## PRESENT CONTROVERSY

¶12 With that history, we finally return to the present case. The complaint in the present case was brought in November 2009 by the State against BNSF seeking: 1) a declaratory judgment requiring BNSF to abide by the terms of the 1984 Agreement between the State and BNSF and a declaration that BNSF is in violation of that agreement, 2) specific performance by BNSF of the 1984 Agreement, and 3) damages for BNSF's alleged breach of the 1984 Agreement.

¶13 On June 2, 2010, the State filed an application for a preliminary injunction to prohibit BNSF "from terminating the payment to the State and its short line operator per loaded car [per-car payments] for each car handled in interchange as required under Section 9 of the 1984 Settlement Agreement." BNSF opposed the State's application and also sought judgment on the pleadings, arguing the suit was barred by both claim preclusion (res judicata) and issue preclusion (collateral estoppel). The District Court denied BNSF's

---

[6] *Central Montana Rail v. BNSF Railway Co.*, 2011 U.S. App. LEXIS 5704 (March 18, 2011).

motion for judgment on the pleadings and granted the State's application for a preliminary injunction.

¶14 In granting the preliminary injunction, the District Court found "the State has made out a prima facie case that the 1984 Settlement Agreement has not been terminated and obligations remain thereunder." The District Court then ordered:

> To preserve the status quo, the State's application for preliminary injunction is GRANTED TO THE FOLLOWING EXTENT: Should the State present another short line operator's agreement in the form and substance attached as APPENDIX "B" to the 1984 Settlement Agreement, BNSF is enjoined from refusing to enter into that agreement and to perform the same during the pending of this action. Further, during this time, BNSF is enjoined from terminating any such short line operator's agreement without notice to the State and a subsequent showing of good cause before this Court. (Capitalization in original.)

¶15 BNSF appeals only from the District Court's order granting the preliminary injunction. Orders granting injunctions are immediately appealable. M. R. App. P. 6(3)(e).

## STANDARD OF REVIEW

¶16 A district court's decision to grant or deny a preliminary injunction is "so largely within the discretion of the district court that we will not disturb its decision, barring a manifest abuse of discretion." *Yockey v. Kearns Properties, LLC*, 2005 MT 27, ¶ 12, 326 Mont. 28, 106 P.3d 1185; *City of Great Falls v. Forbes*, 2011 MT 12, ¶ 9, 359 Mont. 140, 247 P.3d 1086. A manifest abuse of discretion is "one that is obvious, evident, or

7

unmistakable." *Yockey*, ¶ 12. We review the district court's conclusions of law to determine whether its interpretation is correct. *Id*.

## DISCUSSION

¶17    An injunction is an order requiring a person to refrain from a particular act. Section 27-19-101, MCA. An applicant for a preliminary injunction must either establish a prima facie case, or show that it is at least doubtful whether or not he will suffer irreparable injury before his rights can be fully litigated. *Benefis Healthcare v. Great Falls Clinic, LLP*, 2006 MT 254, ¶ 14, 334 Mont. 86, 146 P.3d 714. If either showing is made, then courts are inclined to issue the preliminary injunction to preserve the status quo pending trial. *Id*. "Status quo" means the last actual, peaceable, non-contested condition which preceded the pending controversy. *Id*.; *Sweet Grass Farms, Ltd. v. Board of County Commissioners*, 2000 MT 147, ¶ 28, 300 Mont. 66, 2 P.3d 825.

¶18    An injunction may be granted in the following cases, among others:

(1)  when it appears that the applicant is entitled to the relief demanded and the relief or any part of the relief consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually;

(2)  when it appears that the commission or continuance of some act during the litigation would produce a great or irreparable injury to the applicant;

(3)  when it appears during the litigation that the adverse party is doing or threatens or is about to do or is procuring or suffering to be done some act in violation of the applicant's rights, respecting the subject of the action, and tending to render the judgment ineffectual;

Section 27-19-201, MCA. Only one subsection need be met for an injunction to issue. *Sweet Grass Farms*, ¶ 27.

8

¶19 An injunction will not issue to restrain an act already committed; it is not an appropriate remedy to procure relief for past injuries. *Bouma v. Bynum Irrigation District*, 139 Mont. 360, 364, 364 P.2d 47, 49 (1961); *Mustang Holdings, LLC v. Zaveta*, 2006 MT 234, ¶ 15, 333 Mont. 471, 143 P.3d 456. Where the entire injury is in the past, an injunction cannot issue. *Billings Associated Plumbing, Heating & Cooling Contractors v. State Board of Plumbers*, 184 Mont. 249, 255, 602 P.2d 597, 601 (1979); *Mustang Holdings*, ¶¶ 15-16.

¶20 In granting the preliminary injunction in this case, the District Court limited its analysis to subsections (1) and (3) of § 27-19-201, MCA. It did not address irreparable injury, stating that issue was "hotly contested." Instead, it found that the State had made a prima facie case, and that BNSF's position that it owed no obligations under the 1984 Agreement would render a final judgment ineffectual. It then found that the "status quo is to effectively put the parties in the position they were in on September 6, 1984" which is the day after the 1984 Agreement was signed. It then issued an order, quoted above at ¶ 14, barring BNSF from refusing to sign another, hypothetical interchange agreement and barring BNSF from terminating any such interchange agreement without notice to the State and a good cause showing before the District Court.

¶21 The District Court manifestly abused its discretion when it issued the preliminary injunction. The State requested a preliminary injunction prohibiting BNSF "from terminating the payment to the State and its short line operator per loaded car [per-car payments] for each car handled in interchange as required under Section 9 of the 1984 Settlement Agreement." The State admits it "is not the direct recipient of the per-car

payments at stake in this litigation." BNSF has never made per-car payments to the State. Thus, the District Court could not enjoin BNSF from terminating per-car payments to the State because none were ever, nor will ever be, due to the State under the 1984 Agreement.

¶22    Per-car payments to the State's short line operator (CMR) had already been terminated in *CMR I* well before the State sought the preliminary injunction. That issue was the subject of arbitration which CMR lost, and the arbitration award was confirmed by the federal district court on July 30, 2009, and most recently by the Ninth Circuit Court of Appeals on March 18, 2011. At the time the State sought the preliminary injunction, June 2, 2010, the status quo was that per-car payments to CMR could be, and were, lawfully terminated and replaced with a Rule 11 arrangement.

¶23    Based upon the State's application and requested relief, this case is not suitable for issuance of a preliminary injunction. The entire injury complained of, the termination of per-car payments, is in the past. Per-car payments were terminated well before the District Court could enter any type of injunctive relief. *Mustang Holdings*, ¶ 16. An injunction will not issue to restrain an act already committed; it is not an appropriate remedy to procure relief for past injuries. *Bouma*, 139 Mont. at 364, 364 P.2d at 49; *Mustang Holdings*, ¶ 15.

¶24    That is where the District Court should have stopped. Instead, the District Court went beyond the State's requested relief. It found that the State made a prima facie showing that "the 1984 Settlement Agreement remains an active contract containing rights acquired and obligations owed by each party." It then required BNSF to enter into another interchange agreement "should" one be presented. Once a party to such an agreement, BNSF would then

10

be prohibited from terminating it except under certain circumstances. In effect, the District Court ordered specific performance of the 1984 Agreement under new terms substantially different than the prior agreed upon terms. The new terms severely limit termination of the new interchange agreement and were never part of the 1984 or 1986 Agreements. Requiring BNSF to execute this new interchange agreement would also require BNSF to resume per-car payments, apparently to CMR, who the State says "has continued to provide the service contemplated by the 1984 Settlement Agreement." This simply cannot be done and it was a manifest abuse of discretion to do so.

## CONCLUSION

¶25 It is obvious, evident, and unmistakable that the District Court manifestly abused its discretion in issuing the preliminary injunction in this case. Its order goes far beyond the relief requested by the State. We therefore reverse the order of the District Court granting the preliminary injunction with instructions that the District Court dissolve the injunction. We remand this case to the District Court for further proceedings consistent with this Opinion and the Ninth Circuit Court of Appeals decision.


/S/ MICHAEL E WHEAT


We Concur:

/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS
/S/ BETH BAKER

11