DA 11-0460

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 201

MONTANA CANNABIS INDUSTRY ASSOCIATION,
MARK MATTHEWS, SHIRLEY HAMP, SHELLY YEAGER,
JANE DOE, JOHN DOE #1, JOHN DOE #2, MICHAEL
GECI-BLACK, M.D., JOHN STOWERS, M.D., POINT
HATFIELD, and CHARLIE HAMP,

        Plaintiffs, Appellees, and Cross-Appellants,

   v.

STATE OF MONTANA,

        Defendant, Appellant, and Cross-Appellee.

APPEAL FROM:    District Court of the First Judicial District,
                      In and For the County of Lewis and Clark, Cause No. DDV 11-518
                      Honorable James P. Reynolds, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Steve Bullock, Montana Attorney General; James P. Molloy (argued), J.
                Stuart Segrest, Assistant Attorneys General, Helena, Montana

        For Appellees:

                James H. Goetz (argued); J. Devlan Geddes; Goetz, Gallik & Baldwin,
                P.C., Bozeman, Montana

                            Argued and Submitted:  May 30, 2012
                                 Decided:  September 11, 2012

Filed:

_____
                               Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 The State of Montana ("State") appeals from an order preliminarily enjoining parts of the Montana Marijuana Act, § 50-46-301 *et seq.*, MCA. Montana Cannabis Industry Association, Mark Matthews, Shirley Hamp, Shelly Yeager, Jane Doe, John Doe #1, John Doe #2, Michael Geci-Black, John Stowers, Point Hatfield, and Charlie Hamp (collectively "the Plaintiffs") cross-appeal from the same order. We reverse and remand.

## BACKGROUND

¶2 In 2004, Montana voters approved the use of medical marijuana through the passage of I-148, the Medical Marijuana Act. The 2004 Medical Marijuana Act left in place those provisions in the Montana criminal code that make it illegal to cultivate, possess, distribute or use marijuana, while simultaneously protecting authorized users of medical marijuana from being prosecuted. Section 50-46-201(1), MCA (2009) (repealed 2011). In 2011, the Montana Legislature, in response to a drastic increase of caregivers and medical marijuana users, passed House Bill 161, which repealed I-148. The Governor vetoed House Bill 161, and in response, the Legislature enacted Senate Bill 423, which repealed the 2004 Medical Marijuana Act and replaced it with the Montana Marijuana Act ("MMA"), § 50-46-301 *et seq.*, MCA, which dramatically changed the landscape for the cultivation, distribution, and use of marijuana for medical purposes.

¶3 On May 13, 2011, the Plaintiffs filed a lawsuit seeking to both temporarily and permanently enjoin the implementation of the MMA in its entirety. Based on a motion filed with the complaint, the District Court immediately entered a temporary restraining order

2

blocking implementation of § 50-46-341, MCA, which prohibited the advertising of "marijuana or marijuana-related products" and which was scheduled to take effect that day. By stipulation, the temporary restraining order remained in effect pending the preliminary injunction hearing. A hearing on the preliminary injunction was held June 20 through 22, 2011.

¶4 On June 30, 2011, the District Court issued its Order on Motion for Preliminary Injunction. In its Order, the District Court enjoined the following relevant subsections of § 50-46-308, MCA:

> (3) (a) (i) A provider or marijuana-infused products provider may assist a maximum of three registered cardholders.
> (ii) A person who is registered as both a provider and a marijuana-infused products provider may assist no more than three registered cardholders.
>
> (b) If the provider or marijuana-infused products provider is a registered cardholder, the provider or marijuana-infused products provider may assist a maximum of two registered cardholders other than the provider or marijuana-infused products provider.
>
> (4) A provider or marijuana-infused products provider may accept reimbursement from a cardholder only for the provider's application or renewal fee for a registry identification card issued under this section.
>
> .    .    .
>
> (6) A provider or marijuana-infused products provider may not:
>
> (a) accept anything of value, including monetary remuneration, for any services or products provided to a registered cardholder;
>
> (b) buy or sell mature marijuana plants, seedlings, cuttings, clones, usable marijuana, or marijuana-infused products[.]

3

¶5 The District Court preliminarily enjoined a number of sections of the MMA; however, only §§ 50-46-308(3), (4), (6)(a) and (6)(b), MCA, are pertinent to this opinion. The District Court found that these sections substantially implicated the Plaintiffs' fundamental rights to pursue employment, to seek one's own health in all lawful ways, and to privacy. Because the sections substantially implicated the Plaintiffs' fundamental rights, the District Court applied a strict scrutiny analysis, and determined that the Plaintiffs would suffer irreparable harm if the court did not enjoin these provisions.

¶6 The District Court also enjoined §§ 50-46-341, -329(1)-(3), and −303(10), MCA, which are not at issue in this appeal. The remaining provisions of the MMA were not enjoined and, in accordance with the severability clause of the MMA, were allowed to take effect.

¶7 After the District Court issued its Order on the Motion for Preliminary Injunction, the State appealed and the Plaintiffs cross-appealed. We restate the issues on appeal as follows:

¶8 *Issue One: Did the District Court err when it applied a strict scrutiny, fundamental rights analysis to preliminarily enjoin §§ 50-46-308(3), (4), (6)(a) and (6)(b), MCA?*

¶9 *Issue Two: Did the District Court err in not enjoining § 50-46-308(2), MCA?*

¶10 *Issue Three: Did the District Court err in not enjoining § 50-46-308(7), MCA?*

¶11 *Issue Four: Did the District Court err in declining to enjoin the MMA in its entirety?*

## STANDARD OF REVIEW

4

¶12 We typically review a district court's granting or denying a preliminary injunction for a manifest abuse of discretion. *City of Great Falls v. Forbes*, 2011 MT 12, ¶ 9, 359 Mont. 140, 247 P.3d 1086. However, where the district court grants or denies injunctive relief based on conclusions of law, no discretion is involved, and we review the conclusions of law to determine whether they are correct. *Valley Christian Sch. v. Mont. High Sch. Assn.*, 2004 MT 41, ¶ 5, 320 Mont. 81, 86 P.3d 554 (citing *Hagener v. Wallace*, 2002 MT 109, ¶ 12, 309 Mont. 473, 47 P.3d 847).

## DISCUSSION

¶13 As a threshold issue, Plaintiffs argue that the State's appeal of only one of four paragraphs, ¶ 1(d),[1] of the District Court's preliminary injunction order, while reserving other defenses, is an improper request for an interlocutory advisory opinion. We may, however, review "an order granting or dissolving, or refusing to grant or dissolve, an injunction or attachment." M. R. App. P. 6(3)(e). This rule allows an immediate appeal from a preliminary injunction. *State v. BNSF Ry. Co.*, 2011 MT 108, ¶ 15, 360 Mont. 361, 254 P.3d 561. A party is not obligated to appeal the entire preliminary injunction, but instead, may ask this Court to separately review specific provisions within an order granting an injunction. *See e.g. St. James Healthcare v. Cole*, 2008 MT 44, ¶ 54, 341 Mont. 368, 178 P.3d 696. Moreover, in our review of a preliminary injunction, we may review whether the district court applied the proper level of judicial scrutiny to enjoin an allegedly

---

[1] In ¶ 1(d) of its preliminary injunction, the District Court ordered that "[t]he State of Montana is hereby enjoined from enforcing the following sections of Senate Bill 423 . . . Sections 5(3), 5(4), and 5(6)(a) and (b), the section entitled "Provider types – requirements – limitations – activities." These sections correspond to §§ 50-46-308(3), (4), (6)(a) and (6)(b), MCA, of the MMA. The State did not appeal ¶¶ 1(a), (b) or (c) of the District Court's order. In these paragraphs

unconstitutional statute. *See Butte Community Union v. Lewis*, 219 Mont. 426, 430-31, 712 P.2d 1309, 1311-12 (1986). Accordingly, we will review the State's appeal of ¶ 1(d) of the preliminary injunction order.

¶14 Section 27-19-201, MCA, authorizes the issuance of a preliminary injunction when it appears that the applicant is entitled to the relief sought; the commission of an act by a party would cause irreparable harm to the applicant; or the adverse party is doing something that threatens to violate the applicant's rights, respecting the subjects of the action. These requirements are in the disjunctive, meaning that findings that satisfy one subsection are sufficient. *Sweet Grass Farms, Ltd. v. Bd. of County Commrs. of Sweet Grass County*, 2000 MT 147, ¶ 27, 300 Mont. 66, 2 P.3d 825.

¶15 In granting the preliminary injunction in this case, the District Court limited its analysis to the question of irreparable injury. The court properly concluded that the loss of a constitutional right constitutes irreparable harm for the purpose of determining whether a preliminary injunction should be issued. *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 2689-690 (1976).

¶16 In order to determine if a constitutional right has been lost, a court must first determine which of the established levels of scrutiny is appropriately applied: strict scrutiny, middle-tier scrutiny or the rational basis test. *See Snetsinger v. Mont. Univ. Sys.*, 2004 MT 390, ¶ 17, 325 Mont. 148, 104 P.3d 445. Legislation that implicates a fundamental constitutional right is evaluated under a strict scrutiny standard, whereby the government

---

the District Court enjoined sections 20, 14(1), 14(2), 14(3), and 3(10) of SB 423, which correspond to §§ 50-46-341, -329(1)-(3), and -303(10), MCA.

6

must show that the law is narrowly tailored to serve a compelling government interest. *Snetsinger*, ¶ 17. If a law or policy affects a right conferred by the Montana Constitution, but is not found in the Constitution's declaration of rights, we apply middle-tier scrutiny. *Snetsinger*, ¶ 18. If neither strict scrutiny nor middle-tier scrutiny apply, the rational basis test is appropriate. Pursuant to the rational basis test, the statute must be rationally related to a legitimate government interest. *Snetsinger*, ¶ 19.

¶17 Looking to these standards, the District Court determined that §§ 50-46-308(3), (4), 6(a) and 6(b), MCA, substantially implicate the fundamental rights to employment, to pursue one's own health, and to privacy. Accordingly, the District Court applied a strict scrutiny analysis and enjoined those sections. The State, on appeal, argues that the District Court improperly applied strict scrutiny, and instead, should have applied the rational basis test. The Plaintiffs argue that the District Court correctly applied strict scrutiny, and implicitly concede that if strict scrutiny does not apply, the appropriate level of scrutiny is the rational basis test and not middle-tier scrutiny. We will address each right in turn.

**1. RIGHT TO EMPLOYMENT**

¶18 The District Court determined that because the State has declared medical marijuana a legal product in Montana, with an established licensing and distribution system through providers, then the MMA's prohibition of remuneration substantially implicates the fundamental right to employment. The right of the opportunity to pursue employment is a fundamental right that is embodied within Article II, Section 3 of the Montana Constitution, which provides:

7

All persons are born free and have certain inalienable rights. They include the right to a clean and healthful environment and the rights of pursuing life's basic necessities, enjoying and defending their lives and liberties, acquiring, possessing and protecting property, and seeking their safety, health and happiness in all lawful ways. In enjoying these rights, all persons recognize corresponding responsibilities.

While the right to the opportunity to pursue employment is not specifically enumerated, it is a fundamental right because it is a right without which other constitutionally guaranteed rights would have little meaning. *Wadsworth v. State*, 275 Mont. 287, 299, 911 P.2d 1165, 1172 (1996). This right, though, is limited. It does not "grant a right or property interest in any *particular* job or employment." *Wadsworth*, 275 Mont. at 301, 911 P.2d at 1173 (emphasis in original).

¶19 We clarified the boundaries of the right to pursue employment in *Wiser v. State*, 2006 MT 20, 331 Mont. 28, 129 P.3d 133. In *Wiser*, denturists challenged the constitutionality of a Board of Dentistry rule requiring that denturists refer all partial denture patients to dentists before providing partial denture services. *Wiser*, ¶ 10. The denturists, in part, relied upon the right to pursue employment to challenge the rule. In concluding that the rule did not warrant strict scrutiny analysis, this Court noted,

[T]he idea that the right to pursue employment and life's other 'basic necessities' is limited by the State's police power is imbedded in the plain language of the Constitution. Article II, Section 3 states that citizens have the right to pursue 'life's basic necessities . . . *in all lawful ways*.' Art. II, Sec. 3, Mont. Const.

*Wiser*, ¶ 24 (emphasis in original). Continuing, this Court observed that "[t]he Constitution is clear. While it granted the fundamental right to pursue employment, it also *circumscribed*

*that right by subjecting it to the State's police power to protect the public health and welfare.*" *Wiser*, ¶ 24 (emphasis added).

¶20 Here, the District Court concluded that the MMA's prohibition of the right to sell medical marijuana substantially implicated the fundamental right to pursue employment. However, under *Wadsworth* and *Wiser*, although individuals have a fundamental right to pursue employment, they do not have a fundamental right to pursue a particular employment or employment free of state regulation.

¶21 In this case, the legislature, in its exercise of the State's police powers, decided that it would legalize the limited use of medicinal marijuana while maintaining a prohibition on the sale of medical marijuana. This action prohibits employment as a medical marijuana provider, but as noted in *Wadsworth*, an individual has no property interest in a "particular job or employment." Providers, who are ultimately horticulturists, remain free to pursue horticulture work generally, and further, are not proscribed from practicing the art of horticulture - including hydroponic horticulture - for profit. Thus, the MMA does not implicate the fundamental right to employment, and we reverse the District Court's holding on this issue.

**2. RIGHT TO SEEK HEALTH**

¶22 The District Court next concluded that denying providers compensation and limiting the number of cardholders that each provider can serve will substantially implicate Montanans' fundamental right to seek their health in a lawful manner because such

restrictions deny access to medical marijuana, which is otherwise a legal product. The fundamental right to seek health is found in Article II, Section 3 of the Montana Constitution and provides that Montanans have a fundamental right to "seek[] their safety, health and happiness *in all lawful ways*." (Emphasis added.) As with the right to pursue employment, the Constitution is clear that the right to seek health is circumscribed by the State's police power to protect the public's health and welfare. *See Wiser*, ¶ 24.

¶23 In pursuing one's own health, an individual has a fundamental right to obtain and reject medical treatment. *Wiser*, ¶ 17. But, this right does not extend to give a patient a fundamental right to use any drug, regardless of its legality. No court has acceded to this type of affirmative access claim, and Plaintiffs cite to none. *See Abigail Alliance for Better Access to Developmental Drugs v. Von Eschenbach*, 495 F.3d 695, n. 18, (D.C. Cir. 2007).[2]

¶24 Thus, we conclude, in pursuing health, an individual does not have a fundamental affirmative right of access to a particular drug. A patient's "selection of a particular treatment, or at least a medication, is within the area of governmental interest in protecting public health," and regulation of that medication does not implicate a fundamental constitutional right. *Rutherford v. U.S.*, 616 F.2d 455, 457 (10th Cir. 1980). Because the fundamental right to seek one's own health is not implicated, the District Court erred when it applied a strict scrutiny analysis.

## 3. RIGHT TO PRIVACY

---

[2] In *State v. Nelson*, 2008 MT 359, ¶¶ 27, 33, 346 Mont. 366, 195 P.3d 826, we described the use of medical marijuana as a "right." However, the right to use marijuana for medical purposes was limited to use in accordance with the 2004 Medical Marijuana Act, and even though the right existed, our conclusion specifically noted that there may be "restrictions on lawful medical marijuana use." *Nelson*, ¶ 33. Furthermore, *Nelson* did not involve the constitutional

¶25 The District Court also concluded that the restrictions substantially implicated the fundamental right to privacy found in Article II, Section 10, of the Montana Constitution. In reaching its decision, the District Court relied exclusively on *Armstrong v. State*, 1999 MT 261, 296 Mont. 361, 989 P.2d 364. The State argues that the District Court's reliance on *Armstrong* was misplaced because of our subsequent holding in *Wiser*, ¶ 20, and because it is factually distinguishable. We agree with the State.

¶26 In *Armstrong*, the plaintiffs challenged a state law prohibiting certified physicians assistants from performing abortions. This Court struck down the law because it infringed on an individual's personal autonomy protected by the right to privacy. *Armstrong*, ¶ 75. In so holding, this Court noted that the purpose of the law was clearly "to make it as difficult, as inconvenient and as costly as possible for women to exercise their right to obtain, from the health care provider of their choice, a specific medical procedure" protected by both the U.S. and Montana constitutions. *Armstrong*, ¶ 65.

¶27 This Court concluded in *Armstrong* that the right to health care is a fundamental privacy right, but only to the extent that it protects an individual's right to obtain a particular *lawful* medical procedure. *Wiser*, ¶ 15, (citing Armstrong, ¶ 62). In *Wiser*, ¶ 15, this Court circumscribed its holding in *Armstrong* when we stated that "it does not necessarily follow from the existence of the right to privacy that every restriction on medical care impermissibly infringes that right." The *Wiser* Court additionally determined that an individual does not have a fundamental right to obtain medical care free of regulation.

claims asserted in this case, and is no longer applicable because the 2004 Act has been repealed.

11

*Wiser*, ¶ 20. Thus, while the right to privacy is certainly implicated when a statute infringes upon a person's ability to obtain or reject a *lawful* medical treatment, it does not follow that the right to privacy is necessarily implicated when a statute regulates a particular medication. *See Wiser*, ¶ 20; *Armstrong*, ¶ 65.

¶28 Plaintiffs argue, and the District Court concluded, that in accordance with this standard, the State's regulation of medical marijuana falls under our analysis in *Armstrong* and not *Wiser*. In that regard, the Plaintiffs, and the District Court, are wrong. In *Armstrong*, the statute at issue prevented individuals from receiving a lawful, *constitutionally* protected medical procedure, abortion. Both the U.S. Supreme Court and this Court recognized that prohibiting a woman from obtaining an abortion violates her personal autonomy, and therefore, her right to privacy. *See Roe v. Wade*, 410 U.S. 113, 153, 93 S. Ct. 705, 727 (1973); *Armstrong*, ¶ 75. Unlike *Roe* and *Armstrong*, Plaintiffs' alleged affirmative right to access a particular drug has not been constitutionally protected under the right to privacy. In fact, no court has acceded to the notion that the right to privacy encompasses an affirmative right to access a particular drug or treatment. *See Abigail Alliance*, 495 F.3d at n. 18.

¶29 One such claim was expressly rejected by the California Supreme Court in *People v. Privitera*, 591 P.2d 919 (Cal. 1979). There, the defendants were convicted of the felony of conspiracy to sell and to prescribe an unapproved drug – Laetrile – intended to alleviate cancer. The defendants argued on appeal that the statute prohibiting the sale of an unapproved cancer drug was unconstitutional because it violated the defendants'

12

fundamental right to privacy under the federal and California constitutions. *Privitera*, 591 P.2d at 921. The court rejected the defendants' contention and concluded that "the asserted right to obtain drugs of unproven efficacy is *not* encompassed by either the right of privacy embodied in either the federal or the state Constitutions." *Privitera*, 591 P.2d at 921 (emphasis in original). Because the right to Laetrile was not embodied in either constitution, the court relied on the rational basis test to determine the constitutionality of the law. *Privitera*, 591 P.2d at 921.

¶30    Following *Privitera*, the Ninth Circuit, in *Carnohan v. United States*, 616 F.2d 1120 (1980), similarly considered whether the right to privacy encompasses the right to use Laetrile free of government regulation. In *Carnohan*, the plaintiff brought suit to secure a right to Laetrile, which the U.S. Food and Drug Administration (FDA) had yet to approve for distribution. The plaintiff argued that the FDA's regulatory scheme was so burdensome as applied to individuals that it infringed upon his constitutional rights. The court applied the rational basis test in evaluating Carnohan's claim because the "[c]onstitutional rights of *privacy* and personal liberty do not give individuals the right to obtain laetrile free of the lawful exercise of government police power." *Carnohan*, 616 F.2d at 1122 (emphasis added); *See also Rutherford*, 616 F.2d at 457.

¶31    Similarly, the plaintiffs in *County of Santa Cruz v. Ashcroft*, 279 F. Supp. 2d 1192 (N.D. Cal. 2003), sought to enjoin enforcement of the Controlled Substances Act (CSA), 21 U.S.C. § 801 *et seq.*, against patients using medical marijuana in compliance with California's Compassionate Use Act, Cal. Health & Safety Code § 11362.5 (Lexis 2002),

13

because the CSA's regulation of marijuana violated the plaintiffs' fundamental right to alleviate pain and suffering. In analyzing the plaintiffs' argument, the court stated:

> Plaintiffs submit compelling declarations that medicinal marijuana is the best means for certain Patient-Plaintiffs to avoid debilitating pain and suffering. Defendants do not dispute this evidence, but they note that the Patient-Plaintiffs only are deprived of the right to use a specific type of treatment and are not deprived of the recognized right to treatment generally. While Plaintiffs claim that marijuana is the *only* means for certain Patient-Plaintiffs to avoid extreme pain and suffering, the record does not necessarily support that conclusion. The fact that the Patient-Plaintiffs have experienced relief from pain as a result of their marijuana use does not mean that other, legal, means of pain relief are unavailable.

*County of Santa Cruz*, 279 F. Supp. 2d at 1203 (emphasis in original). Based on these arguments, the court determined that the plaintiffs did not have a constitutionally protected fundamental right to use medical marijuana and denied their request for an injunction. *County of Santa Cruz*, 279 F. Supp. 2d at 1204.

¶32 We agree with the above cases, and conclude the right to privacy does not encompass the affirmative right of access to medical marijuana. The Plaintiffs may decry that the Legislature gutted I-148, but it was within the Legislature's right to do so, *Bottomly v. Ford*, 117 Mont. 160, 169, 157 P.2d 108, 115 (1945), and the new medical marijuana framework does not suddenly raise the affirmative right to access a particular drug to a fundamental right protected by our Constitution. Moreover, the Plaintiffs cannot seriously contend that they have a fundamental right to medical marijuana when it is still unequivocally illegal under the Controlled Substances Act. 21 U.S.C. §§ 812(c), 841; *Gonzales v. Raich*, 545 U.S. 1, 22, 125 S. Ct. 2195, 2209 (2005). We accordingly reverse the District Court's holding that the MMA substantially implicates the Plaintiffs' fundamental right to privacy.

14

¶33    *Issues Two, Three and Four.*

¶34    Because we are remanding Issue One to the District Court, we decline to address

Issues Two, Three and Four.

## **CONCLUSION**

¶35    For the reasons stated above, we reverse and remand to the District Court to apply

the rational basis test to determine whether §§ 50-46-308(3), (4), (6)(a) and (6)(b), MCA,

should be enjoined.


                                              /S/ MICHAEL E WHEAT
We Concur:

/S/ MIKE McGRATH
/S/ JIM RICE
/S/ BETH BAKER
/S/ BRIAN MORRIS

/S/ SUSAN WATTERS
District Court Judge Susan Watters,
sitting for Justice Patricia Cotter

Justice James C. Nelson, dissenting.

¶36 I dissent. In my view, this case does not present a justiciable controversy. As such, our only permissible course of action is to vacate the District Court's decision and remand with instructions to dismiss the action. Even reaching the merits of the issues, however, I have concerns with the breadth of some of the statements in the Court's Opinion. I address these two points in turn.

## I. Justiciability

¶37 I discussed the question of justiciability vis-à-vis the medical marijuana laws in *Med. Marijuana Growers Assn. v. Corrigan*, 2012 MT 146, ¶¶ 31-40, 365 Mont. 346, 281 P.3d 210 (Nelson, J., concurring). I reiterate and expand on that discussion here.

¶38 My consideration of justiciability is premised on two fundamental and undisputed principles. First, courts have an independent obligation to determine whether jurisdiction exists and, thus, whether the constitutional requirement of a "justiciable controversy" has been met. *Plan Helena, Inc. v. Helena Regl. Airport Auth. Bd.*, 2010 MT 26, ¶ 11, 355 Mont. 142, 226 P.3d 567. A court must address sua sponte whether it has proper jurisdiction over the case before it. *State v. Bonamarte*, 2006 MT 291, ¶ 5, 334 Mont. 376, 147 P.3d 220. Second, if a court determines that it lacks jurisdiction, then it may take no further action in the case other than to dismiss it. *Plan Helena*, ¶ 11. I believe the Court errs in failing to determine, as a threshold matter, whether we even have jurisdiction to decide the issues raised by the parties.

16

¶39 The courts of Montana do not have the power to issue advisory opinions or to decide moot questions. *Plan Helena*, ¶¶ 9, 11; *Progressive Direct Ins. Co. v. Stuivenga*, 2012 MT 75, ¶ 17, 364 Mont. 390, 276 P.3d 867. This limitation derives from the Montana Constitution, which limits the judicial power of Montana's courts to deciding only justiciable controversies. *Plan Helena*, ¶ 6; *Greater Missoula Area Fedn. v. Child Start, Inc.*, 2009 MT 362, ¶ 22, 353 Mont. 201, 219 P.3d 881. A justiciable controversy is one that is "definite and concrete, touching legal relations of parties having adverse legal interests" and "admitting of specific relief through decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts, or upon an abstract proposition." *Reichert v. State*, 2012 MT 111, ¶ 53, 365 Mont. 92, 278 P.3d 455 (internal quotation marks omitted). To be justiciable the controversy must, among other things, "be one upon which a court's judgment will effectively and conclusively operate, as distinguished from a dispute invoking a purely political, administrative, philosophical, or academic conclusion." *Reichert*, ¶ 53. The "cases" and "controversies" that are within the judicial power to determine do not include "abstract differences of opinion." *Plan Helena*, ¶ 9 (internal quotation marks omitted).

¶40 In 2004, Montanans adopted Initiative No. 148 which created the Medical Marijuana Act. *See* Title 50, chapter 46, MCA (2005). The Legislature has since tinkered with the Act, going so far as to scrap the original voter-approved scheme entirely and replace it with a new and improved Montana Marijuana Act. *See* Opinion, ¶ 2; Laws of Montana, 2011, ch. 419; Title 50, chapter 46, part 3, MCA (2011). Yet, with due respect to, and without impugning

17

the zeal and good faith of, everyone involved in this continuing fiasco, the fact remains that Montana's medical marijuana laws, in effect, purport to make legal conduct that is violative of the federal Controlled Substances Act (84 Stat. 1242, 21 U.S.C. § 801 et seq.).  During oral argument, counsel for the State and counsel for Plaintiffs suggested this was not true— that Montana's medical marijuana laws do not legalize the use, possession, or distribution of marijuana, but instead provide an "affirmative defense" to a state-based criminal prosecution where the conduct at issue was in accordance with those laws.  Such assertions, however, elevate form over substance.  The truth is that Montana's medical marijuana laws are intended to allow certain Montanans to engage in conduct which is criminal under federal law.  Indeed, that is why many of these cases have arisen *not* in the context of a criminal prosecution, but in the form of an action for declaratory or injunctive relief:  the plaintiffs seek a determination that they may use, possess, or distribute marijuana in Montana, federal law notwithstanding.  The present case falls into that category, as does the *Med. Marijuana Growers* case.  *Cf. City of Deer Lodge ex rel. City of Deer Lodge Ordinances 130 & 136 v. Chilcott*, 2012 MT 165, 365 Mont. 497, ___ P.3d ___ (a mandamus action seeking, in part, an interpretation of the medical marijuana laws).

¶41   Stripped to its core, the remarkable premise underlying Plaintiffs' request for relief in this case is that they have a fundamental right under the Montana Constitution to engage in conduct which is criminal under federal law.  Indeed, no matter what this Court might hold in this case or any of the other medical marijuana cases, the underlying assumption of everyone involved is that the plaintiffs intend to go out and violate the federal Controlled

18

Substances Act. That Montana's courts have become complicit in this endeavor (by taking up questions regarding the interpretation of Montana's medical marijuana laws in the absence of an actual underlying criminal prosecution) is shocking.

¶42 I disagree with the premise implicit in the Court's approach—namely, that it is appropriate for state legislatures to enact laws which purport to make *lawful* conduct which federal law has already dictated is *unlawful*. Despite the Court's, the Legislature's, and the Plaintiff's efforts, marijuana possession and distribution cannot simultaneously be both lawful and unlawful—except, perhaps, inside Schrödinger's cat's box.[1] Indeed, it is axiomatic that federal laws prevail over contrary state laws. As the Supreme Court recently explained:

> Federalism, central to the constitutional design, adopts the principle that both the National and State Governments have elements of sovereignty the other is bound to respect. From the existence of two sovereigns follows the possibility that laws can be in conflict or at cross-purposes. The Supremacy Clause provides a clear rule that federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

*Arizona v. United States*, ___ U.S. ___, 132 S. Ct. 2492, 2500 (2012) (citations omitted).[2]

¶43 Under the Supremacy Clause, state law must give way to federal law in certain circumstances, including "cases where compliance with both federal and state regulations is

---

[1] Schrödinger's cat was both alive and dead until its box was opened. *See Denke v. Shoemaker*, 2008 MT 418, ¶ 78 n. 2, 347 Mont. 322, 198 P.3d 284 (citing E. Schrödinger, *Die gegenwärtige Situation in der Quantenmechanik*, 23 Die Naturwissenschaften 807-12, 823-28, 844-49 (1935)).

[2] In full, the Supremacy Clause states: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary

a physical impossibility." *Arizona*, 132 S. Ct. at 2501 (internal quotation marks omitted). Under federal law, marijuana is classified as a Schedule I drug. *Gonzales v. Raich*, 545 U.S. 1, 14, 125 S. Ct. 2195, 2204 (2005). This classification renders the manufacture, distribution, or possession of marijuana a criminal offense. *Gonzales*, 545 U.S. at 14, 125 S. Ct. at 2204. It is a physical impossibility to comply with this federal law while, at the same time, engaging in the use, possession, or distribution of medical marijuana which Plaintiffs claim Montana's Constitution and statutes allow. Of course, Plaintiffs could avoid this conflict by simply refraining from engaging in such activities; however, they have indicated a desire not to do so. In this circumstance, federal law prevails over state law. *Gonzales*, 545 U.S. at 29, 125 S. Ct. at 2212 ("[L]imiting the activity to marijuana possession and cultivation 'in accordance with state law' cannot serve to place respondents' activities beyond congressional reach. The Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail."). And thus the question whether Plaintiffs' use, possession, or distribution of marijuana is in compliance with Montana law involves a purely academic (and therefore nonjusticiable) determination. *Reichert*, ¶ 53.

¶44    Where the State has in fact commenced a civil or criminal proceeding in which one of Montana's medical marijuana laws may provide a defense, and the defendant seeks dismissal or mounts a defense based on that law, it may then be necessary for this Court to interpret the medical marijuana laws within this specific context. *See e.g. State v. Johnson*, 2012 MT

notwithstanding." U.S. Const. art. VI, cl. 2.

101, 365 Mont. 56, 277 P.3d 1232; *State v. Pirello*, 2012 MT 155, 365 Mont. 399, 282 P.3d 662; *State v. Stoner*, 2012 MT 162, 365 Mont. 465, ___ P.3d ___. Setting such cases aside, however, when Montana's courts are asked to interpret Montana's medical marijuana laws, they are asked, in effect, to issue an opinion "advising what the law would be upon a hypothetical state of facts, or upon an abstract proposition." *Reichert*, ¶ 53 (internal quotation marks omitted). The hypothetical state of facts is a world where the grower, caregiver, provider, or user is not already precluded by federal law from growing, distributing, selling, or using marijuana. Irrespective of whether the conduct at issue is permissible under Montana law, it is unlawful under federal law. A decree in favor of the medical marijuana grower, caregiver, provider, or user is consequently meaningless because their activities are illegal regardless.

¶45 Judicial officers (as well as members of the legislative and executive branches) take an oath to "support, protect and defend the constitution of the United States . . . ." Mont. Const. art. III, § 3. The Constitution of the United States provides, among other things, that "the Laws of the United States . . . shall be the supreme Law of the Land; *and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.*" U.S. Const. art. VI, cl. 2 (emphasis added). This Court is thus bound by duly enacted federal law. Providing interpretations of Montana laws that are clearly contrary to federal laws in the conduct they purport to authorize is in tension with our oath and duty to adhere to the federal laws. Providing such interpretations is also in tension with the constitutional limitation on judicial power precluding us from rendering advisory

21

opinions. For these reasons, I conclude that Montana's courts should not—indeed cannot—be required to issue opinions concerning state medical marijuana laws that are trumped by federal law and are mooted by reason of the Supremacy Clause. Again, I would recognize an exception where the State has in fact commenced a civil or criminal proceeding in which one of Montana's medical marijuana laws may provide a defense, and the defendant seeks dismissal or mounts a defense based on that law. The present case is not such a proceeding, however.

¶46    I questioned the parties at oral argument about the applicability of the Supremacy Clause to the issues in this case. During the ensuing colloquies, counsel for the State and counsel for Plaintiffs opined that any attempt by the federal government to force Montana to criminalize marijuana use, possession, and distribution would run afoul of the Supreme Court's "commandeering" doctrine. Under that doctrine, the federal government cannot compel the states to enforce federal laws or to enact or administer federal regulatory programs. *New York v. United States*, 505 U.S. 144, 112 S. Ct. 2408 (1992); *Printz v. United States*, 521 U.S. 898, 117 S. Ct. 2365 (1997). That is not what is happening here, however. Unlike the Ravalli County Sheriff/Coroner in *Printz* who complained that Congress could not command state executive officers to conduct background checks on prospective handgun purchasers, there is no complaint or allegation in the present case that Congress has commanded any Montana executive or legislative officials to enforce, enact, or otherwise implement laws pursuant to the Controlled Substances Act. More to the point, although Congress lacks the power to commandeer state governments, that fact does not render

22

Plaintiffs' use, possession, and distribution of marijuana any less unlawful under federal law. It is undisputed that Congress does have the power to declare the manufacture, distribution, or possession of marijuana a criminal offense. *Gonzales*, 545 U.S. 1, 125 S. Ct. 2195. The instant lawsuit seeks nothing more than a determination that Plaintiffs have a state constitutional right to violate this federal law. The Supremacy Clause answers that question with a resounding "No!"

¶47    In closing this discussion, I reiterate what I said in *Med. Marijuana Growers*. For the marijuana community—medical, commercial, and recreational—there is a solution to the problem. If the anti-marijuana paradigm is to be changed, it must be changed at the federal level first. Congress has enacted federal laws making marijuana manufacture, distribution, and possession a criminal offense and, in the process, rendering any contrary state laws superfluous. Obviously, changing this paradigm will involve educating Congress and whoever is President and will require concerted political efforts nationwide to elect supportive legislators and not to reelect senators, representatives, and executives who are opposed to changing the marijuana paradigm.

¶48    In summary, the courts of Montana should not be required to devote any more time trying to interpret and finesse state laws that, ultimately, are contrary to federal law and the Supremacy Clause. After all, judges in Montana take an oath to support, protect, and defend the federal Constitution and are bound by federal laws, anything in the laws of this State to the contrary notwithstanding.

## II. The Court's Analysis

23

¶49     I believe the decisions of the District Court and this Court amount to advisory opinions. But because the Court has nevertheless chosen to discuss the merits of the issues on appeal, I briefly note my concern with certain aspects of the Court's analysis.

¶50     For starters, the Court overlooks two fundamental principles relevant to Plaintiffs' claims. First, this Court has held repeatedly that the rights enumerated in Article II of Montana's Constitution (the Declaration of Rights) are *fundamental* constitutional rights. *Kortum-Managhan v. Herbergers NBGL*, 2009 MT 79, ¶ 25, 349 Mont. 475, 204 P.3d 693 (citing cases); *Wadsworth v. State*, 275 Mont. 287, 299, 911 P.2d 1165, 1172 (1996). Second, this Court has also held that *strict scrutiny* applies to an alleged infringement of a fundamental right. *Gryczan v. State*, 283 Mont. 433, 449, 942 P.2d 112, 122 (1997); *Snetsinger v. Mont. Univ. Sys.*, 2004 MT 390, ¶ 17, 325 Mont. 148, 104 P.3d 445. Here, Plaintiffs' claims are premised on Article II, Sections 3 and 10. Because Article II, Sections 3 and 10 are contained in the Declaration of Rights, it necessarily follows that they are fundamental rights to which strict scrutiny applies. The Court is thus wrong in directing the District Court to analyze Plaintiffs' claims using a "rational basis" standard. Opinion, ¶ 35. We do not apply rational-basis review to legislation which regulates the exercise of a fundamental right.

¶51     Indeed, it is a cardinal principle of constitutional law that Montana's Constitution "is the supreme law of this State" and its mandate "must be followed by each of the three branches of government." *Associated Press v. Bd. of Pub. Educ.*, 246 Mont. 386, 391, 804 P.2d 376, 379 (1991). A well-established corollary of this rule is that where a statute or

administrative regulation implicates a fundamental right, we apply *strict scrutiny*—which means the constitutional right may not be impaired absent the showing of a compelling state interest, and the statute or regulation must be closely tailored to effectuate only that compelling state interest by the least onerous path available. *Wadsworth*, 275 Mont. at 302, 911 P.2d at 1174; *Armstrong v. State*, 1999 MT 261, ¶ 34, 296 Mont. 361, 989 P.2d 364; *Mont. Envtl. Info. Ctr. v. Dept. of Envtl. Quality*, 1999 MT 248, ¶¶ 59-63, 296 Mont. 207, 988 P.2d 1236; *Snetsinger*, ¶ 17. With today's Opinion, the Court turns each of these firmly established principles on its head.

¶52 The real question in this appeal—setting aside the threshold justiciability issue—is not what level of scrutiny applies. As stated, strict scrutiny applies to any rights contained in the Declaration of Rights. The question, rather, is whether the constitutional provisions upon which Plaintiffs rely include the rights they claim. In this regard, I have grave concerns with the Court's suggestions that the rights enumerated in Article II, Section 3 are circumscribed by the State's police power. *See e.g.* Opinion, ¶¶ 21, 22; *see also* Opinion, ¶ 30 (implying that the right to privacy is also circumscribed by the police power). If this proposition were true, then the constitutional rights at issue would be rendered meaningless. After all, the Montana Constitution generally, and the Declaration of Rights especially, serve as a restraint on governmental power. *See Cruse v. Fischl*, 55 Mont. 258, 263, 175 P. 878, 880 (1918) ("our Constitution is . . . a limitation upon the powers of government"); *State ex rel. James v. Aronson*, 132 Mont. 120, 127, 314 P.2d 849, 852 (1957) ("the State Constitution is a limitation upon the power of the legislature and not a grant of power to that body"). Such

restraint does not exist if, as the Court appears to hold, the parameters of constitutional rights are dictated by the State's police power as defined by changing compositions of the legislative and executive branches. Again, the Montana Constitution is the supreme law of this State and its mandate must be followed by each of the three branches of government—not the other way around. *Associated Press*, 246 Mont. at 391, 804 P.2d at 379.

¶53 In this regard, I believe the Court overreads our decision in *Wiser v. State*, 2006 MT 20, 331 Mont. 28, 129 P.3d 133. There, the appellant denturists claimed they had a fundamental right to practice denturity "free of regulation." *Wiser*, ¶ 21. We rejected that claim, noting that the State has police power to regulate for the health and welfare of its citizens and that the fundamental right to pursue employment and life's other "basic necessities" is subject to the State's power to protect the public's health and welfare. *Wiser*, ¶ 24. We also noted that the regulatory provision at issue did not bar denturity; to the contrary, it left the appellants free to pursue the profession. *Wiser*, ¶ 22. Our holding was simply that "while one does have the fundamental right to pursue employment, one does not have the fundamental right to practice his or her profession free of state regulation promulgated to protect the public's welfare." *Wiser*, ¶ 24. I signed the *Wiser* opinion and still agree with this holding. I *disagree*, however, with the Court's expansion of *Wiser*'s holding in the present case to stand for the proposition that the parameters of the Article II, Section 3 rights are dictated, circumscribed, or trumped by the State's police power.

¶54 In my view, Plaintiffs' constitutional claims may be resolved on a much narrower ground. The Supremacy Clause, again, dictates that federal law "shall be the supreme Law

26

of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. In my view, it is wholly implausible to suggest that Article II, Sections 3 and 10 guarantee the right to engage in conduct which federal law proscribes—here, selling and using marijuana. Indeed, Article II, Section 3 recognizes "the rights of pursuing life's basic necessities, enjoying and defending their lives and liberties, acquiring, possessing and protecting property, and seeking their safety, health and happiness *in all lawful ways*" (emphasis added). And the Court itself recognizes, near the end of the Opinion, that "Plaintiffs cannot seriously contend that they have a fundamental right to medical marijuana when it is still unequivocally illegal under the Controlled Substances Act." Opinion, ¶ 32. This is more than enough to revolve Plaintiffs' claims, and I thus question the judiciousness of the Court's discussion of the State's police power, not to mention the Court's wholesale adoption of federal and out-of-state caselaw to interpret and limit the constitutional rights at issue. It is unnecessary to assess whether Montana's medical marijuana laws pass muster under the Montana Constitution. Because federal law and the Supremacy Clause render Plaintiffs' activities unlawful regardless, they have no state constitutional rights to vindicate in this case.

### III. Conclusion

¶55 For the foregoing reasons, I would vacate the District Court's decision and remand with instructions to dismiss this action. I dissent from the Court's contrary resolution of this case.

27

/S/ JAMES C. NELSON